**IOWA WEST RACING ASSOCIATION, An Iowa Nonprofit Corporation d/b/a Bluffs Run, Appellee,**

v.

**IOWA RACING AND GAMING COMMISSION, and Jack P. Ketterer, Administrator of the Iowa Racing and Gaming Commission, Appellants.**

No. 95–151.

Supreme Court of Iowa.

April 17, 1996.

899

Thomas J. Miller, Attorney General, and Jeffrey D. Farrell, Assistant Attorney General, for appellants.

James A. Campbell and Edean M. Wetherell of Peters Law Firm, Council Bluffs, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and TERNUS, JJ.

HARRIS, Justice.

The legislature enacted a series of tax set-asides, allowing gaming enterprises to retain portions of tax revenues to be used by them for retiring debt obligations. The question here is whether one of these entitlements applied for the 1992 racing season of the plaintiff gaming enterprise. The answer is yes and we thus affirm a trial court judgment so holding.

Plaintiff Iowa West Racing Association (Bluffs Run) is a dog racing facility duly licensed by the Iowa racing and gaming commission (IRGC) for operation in Council Bluffs, Iowa. Defendant IRGC is the state agency charged with governing the parimutuel wagering industry. Its duties include, among others, approval of the dates set for racing seasons and the collection of the parimutuel tax owed to the state. *See* Iowa Code § 99D.7 (1993).

The statute in question stems from Iowa's legalization of parimutuel gambling on horse and dog races. 1983 Iowa Acts ch. 187. A state racing (later racing and gaming) commission was created to regulate this new industry. *Id.* §§ 5–7. The Act imposed a flat tax of six percent on the gross sum wagered at each race. *Id.* § 15. One-half of

one percent was allocated to the city or county in which the racing facility was located, with the remaining portion going to the state's general fund. *Id.* § 15(1)–(2). This provision was codified as Iowa Code section 99D.15.

In 1984 the legislature amended section 99D.15 to provide a tax credit of not more than five percent of the gross annual sum wagered at a licensed horse racing facility. 1984 Iowa Acts ch. 1266, § 17(2). The credit was to be paid into a special fund and used for the sole purpose of retiring debt on the cost of the facility's construction. *Id.* The state retained any portion of the credit not used for this purpose. At the time there was only one state licensed racing facility and it became clear that this horse track would not otherwise generate sufficient income to pay off its construction debt. The tax credit was obviously designed to alleviate this predicament.

During the period of 1985 through 1987 three dog racing facilities became licensed, one each in Dubuque, Council Bluffs, and Waterloo. After these new facilities were established, the General Assembly found it necessary to separate the parimutuel tax provisions of Iowa Code section 99D.15 in order to accommodate the differences between the horse and dog tracks. A new subsection was created establishing a three-tiered tax bracket system for licensed dog tracks. The first-tier tax rate of six percent took effect if the gross sum wagered was $55 million or more; the second-tier tax rate of five percent took effect if the gross sum wagered was between $30 million and $55 million; and the third-tier tax rate of four percent took effect for gross sums wagered below the amount of $30 million. 1989 Iowa Acts ch. 216, § 9. This plan thus accorded tax advantages to tracks with lower revenues.

In contrast to the tax credit available to horse racing facilities, the new subsection also required dog tracks in the four percent or five percent tax brackets to set aside a portion (one percent and two percent respectively) of the gross sum wagered in the racing season for retiring debt or making capital improvements. *Id.* These amendments applied to licensed dog tracks whose racing

season ended on or after January 1, 1989. 1989 Iowa Acts ch. 216, § 12.

After some initial success, revenues at all three dog tracks began to decline steadily in 1989. The General Assembly responded to this decline in 1991 with still another amendment to the parimutuel tax provisions of the Code. Two sections of this Act were advantageous to dog racing tracks. First, section 99D.15(3)(c) was amended to extend the set-aside requirement to dog tracks in the six percent tax bracket in the amount of one-sixth of the track's tax liability. 1991 Iowa Acts ch. 166, § 6. Second, the permissible uses of the set-aside were expanded to include "retiring any debt of the licensee, for capital improvements to the facilities of the licensee, for funding of possible future operating losses, or for charitable giving. . . ." 1991 Iowa Acts ch. 268, § 427. The Act extending the set-aside requirements to dog tracks in the six percent tax bracket was approved on May 10, 1991. Noting the urgency of the legislation, the drafters provided "[t]his Act, being deemed of immediate importance, takes effect upon enactment." 1991 Iowa Acts ch. 166, § 8. The amendment to section 99D.15(3)(c) however was not made effective until January 1, 1993. *Id.* The result of this litigation turns on this January 1, 1993, effective date.

Bluffs Run's 1992 racing season was authorized by IRGC to extend from January 3, 1992, through and including January 1, 1993. Note that the final day of Bluffs Run's 1992 racing season fell on the effective date of Iowa Code section 99D.15(3)(c)(1). During this season Bluffs Run had a gross sum of $57,863,437 wagered on parimutuel dog racing, placing it in the six percent tax bracket.

In January 1993, as directed by statute, Bluffs Run submitted payment of its tax liability for the 1992 racing season to IRGC, the city of Council Bluffs, and Pottawattamie County. These payments totaled only five percent of the gross sums wagered for the season because Bluffs Run determined it was entitled to the one percent deduction under Iowa Code section 99D.15(3)(c)(1). The administrator of IRGC contended the set-aside provision did not apply to taxes on Bluffs Run's 1992 racing season, and refused to

accept the tendered payment. The parties have stipulated that Bluffs Run paid the entire six percent of the gross sum wagered in the 1992 season, but paid the additional one percent (totaling $578,643.37) under protest and subject to a requested refund.

Bluffs Run thereafter obtained a contested hearing with IRGC concerning its requested refund of the additional one percent parimutuel tax. After a hearing, the request for a refund was denied. Bluffs Run then sought judicial review pursuant to Iowa Code chapter 17A. The district court reversed the agency decision and ordered the refund. The matter is before us on IRGC's appeal from this ruling.

I.  Our review is on error. Iowa R.App.P. 4. The sole question on appeal is whether the district court correctly applied the law. *Foods, Inc. v. Iowa Civil Rights Comm'n,* 318 N.W.2d 162, 165 (Iowa 1982).

II.  The initial question in any dispute over the meaning of a statute is whether the provision in question contains ambiguity. *Citizens' Aide/Ombudsman v. Miller,* 543 N.W.2d 899, 902 (Iowa 1996). A statutory provision is ambiguous if reasonable persons can disagree as to its application. *See American Asbestos Training Ctr., Ltd. v. Eastern Iowa Community College,* 463 N.W.2d 56, 58 (Iowa 1990). In the absence of an ambiguity, a statute will be applied in accordance with its plain and ordinary meaning. *Consolidated Freightways Corp. v. Nicholas,* 258 Iowa 115, 121, 137 N.W.2d 900, 904 (1965) (explaining when the language of a statute is plain and its meaning is clear, construction is unnecessary and we are not permitted to look beyond the statute for its meaning).

The rules of statutory construction cannot be employed to raise the ambiguity; rather the ambiguity must be found prior to employing the rules of statutory construction. So, only if we were to first find an ambiguity in the statute, would we proceed to consider the parties' conflicting arguments applying the rules of construction. And we find no ambiguity here that should deter us from applying the statute's words, which seem plain to us. Bluffs Run became entitled to the tax set-aside upon the statute's

effective date. The effective date fell within the 1992 racing season, even though only by one day, and the set-aside was the law when Bluffs Run's parimutuel taxes became due. Iowa Code § 99D.15(3)(a) (tax shall be paid within ten days after the close of the track's racing season). There is nothing unusual in taxing statutes which accord a full year's advantage for events that occur late in the taxing period.

The legislature could have worded the statute so as to require the applicable racing season to expire at some given time as a condition for eligibility, or could have made the set-aside apply only to specified future racing seasons. But other schemes were not chosen, and we apply the words actually adopted, not those which the legislature might, or even perhaps should, have adopted. Iowa R.App.P. 14(f)(13).

According to the plain words chosen for adoption into the statute, the set-aside became effective during the racing season in question. In finding Bluffs Run entitled to the set-off, the trial court correctly applied the plain meaning of the statute.

**AFFIRMED.**