**STATE of Iowa ex rel., Thomas J. MILLER, Attorney General of Iowa, Appellant,**

v.

**MIDWEST PORK, L.C., Peter DeCoster, Austin J. DeCoster d/b/a DeCoster Farms of Iowa and Iowa Ag–Construction Company, Inc., Appellees.**

No. 99–0348.

Supreme Court of Iowa.

April 25, 2001.

Thomas J. Miller, Attorney General, Julie F. Pottorff, Deputy Attorney General, and David R. Sheridan, Assistant Attorney General, for appellant.

Thomas D. Hanson and Clark G. McDermott of Hanson, Bjork & Russell, L.L.P., Des Moines, for appellees Midwest Pork and Peter DeCoster.

Jan M. Mohrfeld and William Sidney Smith of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney & Shindler, P.C., Des Moines, for appellees Austin DeCoster, DeCoster Farms, and Iowa Ag–Construction.

TERNUS, Justice.

This action was brought by the appellant, State of Iowa, to enjoin the defendants/appellees from taking actions in violation of Iowa Code section 455B.202(2)(a) (Supp.1997), which prohibits persons involved in pending environmental litigation concerning confinement feeding operations from constructing or expanding such facilities. The State alleged that one of the defendants, Austin DeCoster d/b/a DeCoster Farms of Iowa was embroiled in three pending judicial enforcement actions brought under chapter 455B, thereby triggering the prohibition of section 455B.202(2)(a). After trial, the district court ruled the defendants had not violated section 455B.202(2)(a), and dismissed the action.

Upon our de novo review, we conclude that the State was entitled to injunctive relief against the defendants, Austin DeCoster d/b/a DeCoster Farms of Iowa and Austin DeCoster's corporation, Iowa Ag–Construction Company, Inc. We reverse the district court judgment as to these defendants, and remand to the district court for issuance of an injunction. We affirm the district court's dismissal of this action as to appellees, Midwest Pork, L.C. and Peter DeCoster.

I.  *Background Facts and Proceedings.*

Prior to the time this case was filed, the Iowa Attorney General filed three judicial enforcement actions against Austin DeCoster d/b/a DeCoster Farms of Iowa for violations of chapter 455B at several of the company's hog confinement centers. After these actions were filed, Peter DeCoster, Austin DeCoster's son, and Peter's wife formed Midwest Pork, L.C. Midwest Pork purchased ten pieces of property from Austin DeCoster for the purpose of developing hog confinement operations. It was disputed at trial whether the money to purchase these properties came from Peter DeCoster's own assets or from funds given to him by his father.

Midwest Pork also entered into construction contracts with Iowa Ag–Construction to build confinement facilities on these properties. Iowa Ag–Construction is owned solely by Austin DeCoster. Midwest Pork borrowed the money to pay for construction from Austin DeCoster and his wife, Patricia. By the time of trial, hog confinement facilities had been constructed on six sites.

The State brought this action asserting three claims for injunctive relief: (1) Midwest Pork is a sham corporation estab-

lished for the purpose of allowing the construction of animal feeding facilities by Austin DeCoster in violation of Iowa Code section 455B.202(2)(*a*); (2) Peter DeCoster and Midwest Pork, as agents for Austin DeCoster, are constructing confinement facilities in violation of section 455B.202(2)(*a*); and (3) Austin DeCoster, acting through Iowa Ag–Construction, is constructing hog confinement facilities in violation of section 455B.202(2)(*a*). *See generally* Iowa Code § 455B.112 (giving the attorney general authority to bring an action for injunction to enforce any provision of chapter 455B). After the district court denied the State's request for preliminary injunctive relief, the case proceeded to trial. The trial court ruled that the State had not proved that Midwest Pork was a sham corporation or that an agency relationship existed between Peter De-Coster and Midwest Pork on one hand and Austin DeCoster on the other. The court also denied injunctive relief based on the activities of Iowa Ag–Construction, holding that section 455B.202(2)(*a*) did not prevent Austin DeCoster from constructing hog confinement facilities for others.

The State appealed. On appeal, the State argues only that the prohibition against constructing or expanding animal feeding structures contained in section 455B.202(2)(*a*) precludes Austin DeCoster's activities in financing and contracting to build such structures. Because the State does not contend on appeal that Midwest Pork is a sham corporation or that Peter DeCoster and Midwest Pork are agents for Austin DeCoster, we will not consider those theories as a basis for injunctive relief.

II. *Scope of Review.*

A request for injunctive relief is an equity action, and, therefore, our review is de novo. *See Perkins v. Madison Coun-* *ty Livestock & Fair Ass'n*, 613 N.W.2d 264, 267 (Iowa 2000); Iowa R.App. P. 4. With the State's abandonment of the sham corporation and agency theories, however, the determinative issue in this case no longer rests on disputed factual issues. Rather the resolution of this case turns on the meaning of section 455B.202(2)(*a*), and whether this statute encompasses the undisputed activities of Austin DeCoster and Iowa Ag–Construction. We review the district court's interpretation of a statute for correction of errors of law. *See State v. Vargason*, 607 N.W.2d 691, 695 (Iowa 2000).

III. *Applicable Law.*

At the time the State filed its petition, section 455B.202(2)(*a*) provided:

A person shall not construct or expand an animal feeding operation structure which is part of a confinement feeding operation, if the person is a party to a pending action for a violation of this chapter concerning a confinement feeding operation in which the person has a controlling interest and the action is commenced in district court by the attorney general.

Iowa Code § 455B.202(2)(*a*). Although the legislature did not define the terms "construct" or "expand," it did provide that for purposes of section 455B.202, " '*construction*' means the same as defined by rules adopted by the [D]epartment [of Natural Resources] applicable to the construction of animal feeding operation structures as provided in this part." *Id.* § 455B.202(1).

Before trial of this matter, the legislature amended section 455B.202 by deleting the subsection incorporating the agency's definition of "construction" and by adding definitions of "construct" and "expand":

For purposes of this subsection, "*construct*" or "*expand*" includes financing

and contracting to build an animal feeding operation structure regardless of whether the person subsequently leases, owns, or operates the animal feeding operation structure.

1998 Iowa Acts ch. 1209, § 29 (codified at Iowa Code § 455B.202(2)(*d*) (1999)). The State does not argue that this amendment applies to the present action. It does contend, however, that the amendment is relevant to the court's interpretation of section 455B.202(2)(*a*) as it was originally enacted because the amendment clarified the legislature's intent with respect to the scope of the original statute.

The issue in this case boils down to this: Does the prohibition against constructing and expanding animal feeding structures contained in section 455B.202(2)(*a*) encompass Austin DeCoster's activities in loaning Midwest Pork the necessary money to construct such facilities and in building those facilities for Midwest Pork through his construction company, Iowa Ag–Construction? Resolution of this issue turns on the meaning of the term "construct" as used in section 455B.202(2)(*a*). We turn now to an analysis of this issue.

IV. *Meaning of Term "Construct."*

■ To ascertain the meaning of the word "construct" we initially look to the pertinent rules adopted by the Department of Natural Resources (DNR). As noted earlier, the legislature specifically stated in section 455B.202(1) that the term "construction" should be given the same meaning in section 455B.202 as defined by the DNR's rules. Because the words "construct" and "construction" are related terms, we will consider the DNR's definition of "construction" to ensure that any

meaning given to "construct" is consistent with that definition.

The only arguable definition of "construction" found in the pertinent rules is the following:

**567—65.7(455B) Construction.** Iowa Code Supplement section 455B.173(13) prohibits an applicant for a construction permit from beginning construction at the location of a site planned for the construction of an animal feeding operation structure until the person has been granted a permit for the construction of the structure by the department. For purposes of this requirement:

**65.7(1)** *Construction begins* when any of the following occurs:

*a.* Excavation for a proposed animal feeding operation structure, or excavation for footings for a proposed animal feeding operation structure.

*b.* Installation of forms for concrete for an animal feeding operation structure.

*c.* Installation of piping for movement of manure within or between animal feeding operation structures.

**65.7(2)** *Construction does not begin* upon occurrence of any of the following:

*a.* Removal of trees, brush, or other vegetative growth.

*b.* Construction of driveways or roads.

*c.* General earth moving for leveling or compacting at the site.

*d.* Installation of temporary utility services.

Iowa Admin. Code r. 567—65.7(1)-(2) (1996) (emphasis added).[1] This definition is not very enlightening because it merely defines when construction begins and does

---

1. This administrative rule has since been amended and is now found at Iowa Administrative Code r. 567—65.8(1)-(2) (1999).

not begin rather than defining the term itself. We note, however, that the focus of the rule is on the actual physical building of the facility. There is nothing in the rule that would indicate the word "construction" does not encompass the listed physical activities, such as excavation or installation of concrete forms, when undertaken by someone who is not the owner of the facility under construction.

In the absence of a legislative definition or a particular legal meaning, the court gives a word its ordinary meaning. *See State v. Westeen*, 591 N.W.2d 203, 208 (Iowa 1999). The dictionary defines the word "construct" as "to form, make, or create by combining parts or elements : BUILD, FABRICATE." *Webster's Third New International Dictionary* 489 (unabr. ed.1993). Applying the common meaning of the word "construct" to section 455B.202(2)(*a*), we think the statute is clear. It prohibits the specified persons from building confinement facilities. Equally apparent is the conclusion that the term "construct" as it is commonly defined does not include the financing of construction.

The defendants argue that the statute only prohibits the construction or building of confinement facilities for the person's own use. We find no such limitation in section 455B.202(2)(*a*), nor is the common meaning of the term "construct" so limited. Under the common usage of this term a contractor hired to build a structure for another is understood to be constructing the building. As this court stated in *State v. Guzman–Juarez*, 591 N.W.2d 1 (Iowa 1999), "To adopt the defendant's interpretation of this statute would require us to read something into the law that is not apparent from the words chosen by the legislature. This we will not do." 591 N.W.2d at 2. Moreover, limiting the scope of section 455B.202(2)(*a*)

would be inconsistent with the principle that the court "give[s] environmental statutes a liberal—not narrow—construction." *State ex rel. Miller v. DeCoster*, 596 N.W.2d 898, 902 (Iowa 1999).

The defendants also contend that construing the word "construct" to include building a facility for another person would lead to absurd results because (1) general contractors would then be required to obtain permits for construction under section 455B.200A, and (2) such an interpretation of the law does not advance the object sought to be accomplished by the legislature in enacting the statute. Addressing first the defendants' argument that the permit requirements would be unreasonably expanded, we think a reading of section 455B.200A shows that the defendants' fears are misplaced. That statute does not require that every person who "constructs" a structure obtain a permit; it merely requires that a permit be obtained before construction begins. A permit obtained by the owner of the proposed facility would appear to satisfy the statutory requirement; it would not be necessary that the person actually building the facility also obtain a permit.

With respect to the defendants' second argument—that our interpretation of section 455B.202(2)(*a*) is not consistent with the legislative purpose underlying the statute, we note initially that the legislature's purpose is determined by what the legislature said, not by what it might have said. *See Perkins*, 613 N.W.2d at 269 ("To ascertain legislative intent, [the court] look[s] to what the legislature said. [The court does] not speculate as to the probable legislative intent apart from the words used in the statute."). As we have already noted, the language chosen by the legislature clearly encompasses the construction of a facility for a person other than the violator. Even if it were necessary to

consider the defendants' argument on its merits, we would reject it. The defendants claim that the restrictions of section 455B.202(2)(*a*) are to "prohibit someone with a pending environmental violation from expanding his facilities by constructing additional facilities." Building a facility for someone else, argue the defendants, does not expand the contractor's environmental responsibility because "[t]he responsibility for the storage and disposal of the manure rests with ... the owner of the facility." This argument overlooks the possibility that environmental violations are not always due to operator error. It is certainly possible that defects or deficiencies in the facility itself, caused by the manner in which it was constructed, could lead to a violation of chapter 455B. Therefore, there is nothing unreasonable or inconsistent about prohibiting a known violator from constructing facilities for another person or entity.

We conclude that the common meaning of the word "construct" includes the building of a confinement structure for oneself or for another. This interpretation of the statute does not lead to an absurd result. The district court erred by limiting the reach of the statute to only those persons who construct structures for themselves.

■■ Although the State insists that the subsequent amendment to the statute is relevant and should be considered in our interpretation of the original statute, we decline to do so. *"If a statute is ambiguous,* the court, in determining the intention of the legislature, may consider ... [t]he legislative history." Iowa Code § 4.6 (emphasis added); *accord Garwick v. Iowa Dep't of Transp.*, 611 N.W.2d 286, 290 n. 3 (Iowa 2000) (refusing to consider legislative history of a statute because the terms of the statute were clear and unambiguous); *see also William C. Mitchell, Ltd. v. Brown*, 576 N.W.2d 342, 347 (Iowa 1998)

(stating that court does not resort to rules of statutory construction unless a statute is ambiguous).

"A statutory provision is ambiguous if reasonable persons can disagree as to its application." *Iowa West Racing Ass'n v. Iowa Racing & Gaming Comm'n*, 546 N.W.2d 898, 900 (Iowa 1996). An ambiguity may arise " 'from the meaning of particular words' " or " 'from the general scope and meaning of a statute when all its provisions are examined.' " *William C. Mitchell*, 576 N.W.2d at 347 (quoting *Holiday Inns Franchising, Inc. v. Branstad*, 537 N.W.2d 724, 728 (Iowa 1995)). We have already determined that the meaning of the word at issue—"construct"—is clear. The State has not directed the court to any other provision of chapter 455B that would create an ambiguity in section 455B.202(2)(*a*). We hold, therefore, that the term "construct" is not ambiguous as used in section 455B.202(2)(*a*). Accordingly, we will not consider the subsequent amendment to section 455B.202 and whether it clarified or changed the meaning of the statute as it existed at the time this action was filed.

V. *Application of Section 455B.202(2)(a).*

■■ A. *Austin DeCoster d/b/a DeCoster Farms of Iowa and Iowa Ag–Construction Company, Inc.* We note initially that there is no dispute that Austin DeCoster is subject to the prohibitions of section 455B.202(2)(*a*). He was "a party to a pending action for a violation of ... chapter [455B] concerning a confinement feeding operation in which [he] ha[d] a controlling interest." Iowa Code § 455B.202(2)(*a*). In addition, the defendants do not contest that the company wholly owned by Austin DeCoster, Iowa Ag–Construction, is subject to the same prohibitions. The only contested issue,

then, with respect to these defendants is whether they "construct[ed] . . . an animal feeding operation structure" within the meaning of section 455B.202(2)(*a*).

The State claims that two actions taken by these defendants violated section 455B.202(2)(*a*): (1) Austin DeCoster's financing of the construction of the confinement facilities; and (2) the building of the facilities by Iowa Ag–Construction. Based on the meaning of the word "construct," as discussed above, we hold that Austin DeCoster did not violate section 455B.202(2)(*a*) by providing funds to Midwest Pork to construct the confinement facilities. The common meaning of "construct" does not include financing. We reach a different result as to Iowa Ag–Construction. Iowa Ag–Construction and its owner, Austin DeCoster, violated section 455B.202(2)(*a*) by building the facilities. As we determined earlier, the fact that others owned the facilities does not change the fact that the buildings were constructed by persons prohibited from doing so.

■ B. *Midwest Pork and Peter De-Coster.* There is no evidence in the record that Midwest Pork or Peter DeCoster were parties to a pending enforcement action under chapter 455B. Moreover, the State has abandoned on appeal its arguments that these entities were agents of Austin DeCoster and that Midwest Pork is a sham corporation. Therefore, there is no factual or legal basis to support a conclusion that these defendants are subject to the prohibitions of section 455B.202(2)(*a*).

VI. *Summary and Disposition.*

Section 455B.202(2)(*a*) prohibits a person subject to a chapter 455B enforcement action from building a livestock confinement structure, regardless of whether the structure is owned by that person or by another person or entity. This statute, as it existed in 1997, did not preclude a person subject to its prohibitions from financing the construction of such structures.

The construction of confinement facilities by Iowa Ag–Construction violates section 455B.202(2)(*a*). Therefore, the district court erred in failing to issue an injunction against Iowa Ag–Construction and Austin DeCoster d/b/a DeCoster Farms of Iowa. We reverse that part of the court's ruling and remand for entry of an order granting the injunctive relief requested by the State. We note that the State has made it clear throughout these proceedings that it is not asking that Iowa Ag–Construction be prohibited from any construction of confinement facilities, but only from constructing such facilities for Midwest Pork, Peter DeCoster, and related individuals or entities. Although the statute as we have interpreted it would permit broader injunctive relief, the district court, in fashioning its order, should restrict the injunction to that requested by the State. *See Douglass v. Iowa City,* 218 N.W.2d 908, 914 (Iowa 1974) (holding injunction should be limited to the specific relief requested by the plaintiff). In this regard, we also observe that the State's request does not encompass any relief with respect to the facilities that have already been constructed.

The activities of Peter DeCoster and Midwest Pork did not violate section 455B.202(2)(*a*) because these defendants were not subject to the prohibitions of that statute. We affirm that part of the district court's order dismissing the State's petition against Peter DeCoster and Midwest Pork.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except LARSON, J. · who takes no part.