# IN THE COURT OF APPEALS OF IOWA

No. 24-0974
Filed December 3, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ASA JAMES STARR,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Zachary Hindman, Judge.

A defendant appeals his convictions following a jury trial.  **AFFIRMED.**

Lucas Taylor of LT Law, Des Moines, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

Late one afternoon in June 2022, a woman was robbed at gunpoint by a masked man while she was pumping gas at a convenience store in Sioux City. Video from the store showed the robbery as it happened. Police also collected videos from houses in nearby neighborhoods, along with statements from witnesses who interacted with the robber and his accomplice as they fled from the scene. Using that evidence, police were able to locate the accomplice, who was the owner and driver of the getaway car. She later cooperated with the police and identified Asa Starr as the robber.

After a seven-day trial, a jury found Starr guilty of first-degree robbery, assault while participating in a felony, and felon in possession of a firearm. Starr appeals his convictions, claiming the evidence was insufficient to establish that he was the robber. He also claims the district court abused its discretion by overruling his objection to a witness's in-court identification as beyond the scope of the minutes of testimony. Finally, Starr claims that under Iowa Code section 232.55(2)(a) (2022), the State was prohibited from using a juvenile adjudication to prove that he was a felon in possession of a firearm in violation of section 724.26(1). We affirm.

## I. Sufficiency of the Evidence

Although Starr presents his issues in a different order on appeal, we must first address his challenge to the sufficiency of the evidence for his convictions. *See State v. Sievers*, 20 N.W.3d 203, 207 (Iowa 2025) (addressing a sufficiency challenge first because if successful, the defendant "would be entitled to a remand for entry of acquittal, and the remaining issues seeking a new trial would be moot").

We review this challenge "for the correction of errors at law, viewing the evidence in the light most favorable to the State." *Id.* "Our review is highly deferential to the jury's verdict, and we affirm the jury's verdict when the verdict is supported by substantial evidence." *Id.* (cleaned up). Evidence is substantial when "it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted).

The record shows that just before 5:00 p.m. on June 27, 2022, while a mother was busy running errands with her three young children, Asa Starr was looking for someone to rob. Starr had spent the day with Shalee Parker—a woman he met the week before while using methamphetamine with a mutual friend. After getting gas at a Walmart, Parker drove Starr to a convenience store near his home in her light blue Toyota Camry. Video from the store showed the Camry pulling up to a gas pump at 4:53 p.m. A couple of minutes later, a white SUV parked at a nearby pump. A woman got out and started getting gas. Parker later testified that after they parked at the pump, Starr was "looking around at people, and most of the people who were around were all men." But then he spotted the woman getting out of the white SUV and told Parker, "That looks sweet."

Parker testified that Starr told her to move the Camry next to the white SUV so that he could rob the woman. Starr changed into a white shirt and used the black shirt that he had been wearing to cover his face. He grabbed Parker's gun— a chrome .25 caliber pistol—from her bag. Starr then got out of the car and ran over to the woman at the pump. The woman testified that as she was taking the hose out of her gas tank, she heard someone say, "Excuse me, ma'am." When she turned around, the woman was face-to-face "with a very tall individual who

was wearing a black mask," white shirt, and a black hat. He had a small silver pistol and demanded that she give him all her money. After a brief struggle over the gun, the woman tried to give the man her wallet, but he pointed to her diaper bag in the front seat and said, "No, I want it all." So the woman gave the man both items, and he ran back to the waiting Camry. The car sped out of the parking lot and headed north.

Meanwhile, a customer at the store who had noticed the robbery unfolding called 911. Police arrived minutes later. While they were talking to witnesses at the store, dispatch received two more calls—both from homeowners who reported seeing a suspicious vehicle in their neighborhoods.

The first call came at 5:06 p.m. from David Brown, who lived on a dead-end road. He had just gotten home from work when he saw a vehicle that he didn't recognize driving behind his house to his sheds. Parker testified at trial that it was her vehicle. She said that after Starr robbed the woman, he jumped back into the Camry and yelled at her to drive. They ended up on Brown's dead-end road. Parker testified that they parked behind the house and threw out the diaper bag. Starr kept the wallet. Parker then drove back down the driveway, where they encountered Brown. He demanded to know what they were doing and ordered Starr to get out of the car. Instead, Parker testified that Starr "got mad and said, 'Fuck that,' and started firing shots out the window." Brown, who was also armed, fired back and hit the rear driver's side tire. Parker ducked down and sped off.

Dispatch received the second call about fifteen minutes later. The caller was a homeowner in a neighborhood to the north of Brown's residence. He reported that a suspicious vehicle was parked in front of his home, which was

towards the end of a cul-de-sac. Parker testified that after they left Brown's residence, she drove the car until they got to that neighborhood. They couldn't go any further because the tire was completely flat. So Parker left the car in front of a house on the cul-de-sac while Starr ran off to hide the gun. Starr later told Parker that he had buried the gun in a large dirt pile near one of the homes in the neighborhood. While Starr was gone, Parker walked to a nearby house to ask for help. When the homeowner refused, Starr called a friend—Pablo DeLeon—to pick them up. DeLeon confirmed at trial that he picked Parker and Starr up that day. And video from a neighbor's house showed DeLeon's car looping around the cul-de-sac where Parker's car was abandoned.

The next day, Parker and Starr went back to the cul-de-sac to get the Camry and find the gun that Starr had buried. The car was gone because law enforcement had towed it to the sheriff's department. But Starr offered a teenager in the neighborhood "a thousand bucks" to help him find a silver box in the dirt pile. The teenager helped Starr dig in the pile for a few minutes, but they didn't find anything. A few weeks later, the owner of the home with the dirt pile found the gun while he was excavating.

During their investigation of the crime, law enforcement obtained a search warrant for the Camry and found Starr's DNA and fingerprints in the car. They also recovered clothing items—including a white shirt, black shorts, and a black flat-bill baseball cap—like those witnesses described Starr as wearing during the robbery and what the videos of the robber showed. Police quickly identified Parker as the owner of the Camry and brought her in for questioning. After confessing to her

involvement in the robbery, Parker agreed to testify against Starr in exchange for a reduced charge.

Starr's challenge to the sufficiency of the evidence focuses on the credibility of Parker's testimony. He argues that Parker "had a clear motive to fabricate her testimony" and that she "was a heavy user of methamphetamine," who participated in "trafficking and proliferation" of the drug. But the strength of identity evidence from witnesses is a question for the jury. *See State v. Shorter*, 893 N.W.2d 65, 74 (Iowa 2017). And Starr raised these credibility issues at trial. Accepting his argument would require us "to pass upon the credibility of witnesses," which is not our job on appeal. *State v. Brown*, 5 N.W.3d 611, 616 (Iowa 2024) (citation omitted); *see also State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022) ("Appellate review of the jury's verdict is not the trial redux."). The ultimate question for us is whether the evidence "supports the finding actually made, not whether the evidence would support a different finding." *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021) (citation omitted). We conclude that it does.

The State presented several surveillance videos showing Starr throughout the day of the robbery. One of them shows Starr with Parker at noon in Parker's light blue Toyota Camry. In another video from just before the robbery, Starr is wearing black socks and black shorts—like those worn by the robber. In both videos, Starr is wearing black slides with a white Champion logo, which can also be seen on the video of the robbery. Starr was wearing the same shoes when he was arrested. Parker's testimony and the corroborating video evidence allowed the jury to determine the plausibility of Starr's theory that "[a]ny number of other suspects could have [committed the robbery]." *See State v. Serres*, No. 23-1618,

2024 WL 4965892, at *5 (Iowa Ct. App. Dec. 4, 2024) (finding video evidence could aid the jury in determining whether identification was reliable).

Starr further challenges the identification evidence because at least two witnesses described the robber as a Black male, while he is Native American. The victim and the woman who called 911 did report that the robber was a Black male. But at trial, the victim explained that "his arm appeared to be light-skin African-American colored." And others who interacted with Starr described him as Hispanic or Native American. The jury could decide for themselves whether these identifications were consistent with Starr's appearance. *See State v. Doolin*, 942 N.W.2d 500, 511 (Iowa 2020) ("Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." (citation omitted)). Starr's race was not the only identifier reported by witnesses. Several people described him as "tall and skinny," "very tall," and "slender," which fit Starr's body-type and did not match the body-type of other suspects put forward by Starr at trial. *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) ("It is . . . for the jury to decide which evidence to accept or reject.").

Viewing all the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Starr committed the crimes at the convenience store.

## II. Witness Identification

Starr next claims the district court erred in overruling his objection to an in-court identification from witness Richard Allen, who lived in the neighborhood with

the cul-de-sac. The minutes of testimony stated that Allen and his wife would testify that on the day after the robbery,

> [T]hey were out in their yard because one of their dogs had gotten out of the house. While they were doing that, a young man came up to them asking for a shovel because they had buried something in the dirt the night prior (June 27th). Rich told [t]his young man that he does not own the dirt pile and would have to talk to the owner, Mel Crawford. He did not loan him a shovel. The man left. Rich will testify that he later saw this young man standing with [a neighborhood teenager] near the dirt pile. This witness will testify as to all he saw, heard, and did in regards to this incident.

At the end of Allen's direct examination—after he provided a physical description of the young man that he encountered—the prosecutor asked, "That individual that you spoke with, do you see him here in the courtroom this morning?" Allen answered, "Yes, right there." Starr argues on appeal that this was beyond the scope of the minutes because they did "not indicate that Allen would identify Starr in court."[1] We review this claim for an abuse of discretion. *See State v. Hayes*, 532 N.W.2d 472, 476 (Iowa Ct. App. 1995).

Iowa Rule of Criminal Procedure 2.5(3) requires the minutes of testimony to state the "name and occupation of each witness upon whose expected testimony the information is based" and "a full and fair statement" of the expected testimony. "The purpose of the rule is to eliminate claims of foul play and provide meaningful minutes from which a defense can be prepared." *State v. Riley*, No. 19-1142, 2021 WL 1904878, at *4 (Iowa Ct. App. May 12, 2021); *see also State v. Ristau*, 340 N.W.2d 273, 274 (Iowa 1983). While the "minutes need not list each detail to which a witness will testify, . . . they must provide [the] defendant

---

[1] We elect to bypass the State's error-preservation concern and address the claim on its merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

with a full and fair statement sufficient to alert him to the source and nature of the information against him." *State v. Ellis*, 350 N.W.2d 178, 181 (Iowa 1984). Because "[e]yewitness testimony is a central part of trial and cannot be confronted by defense counsel on the fly," our supreme court held in *State v. Shorter* that the minutes "must disclose eyewitness testimony." 893 N.W.2d at 82.

Yet this general rule does not necessarily entitle Starr to relief. *See id.* Although the minutes did not specifically state that Allen would identify Starr as the young man that he saw in his neighborhood, the defense was on notice that Allen was at the scene and would testify about the person he witnessed. "[W]hen the challenged minutes, though incomplete, put defendant 'on notice of the necessity of further investigation of the witness'[s] probable testimony,' reversal need not follow admission of matters they do not disclose." *State v. Musso*, 398 N.W.2d 866, 868 (Iowa 1987) (citation omitted). Further, like in *Shorter*, the record does not establish that the State knew before trial that Allen would identify Starr when he took the stand. *See* 893 N.W.2d at 82 (finding an undisclosed identification did not warrant relief on direct appeal where there was no indication "that the prosecution had prior knowledge that such testimony would be forthcoming"). After defense counsel objected to the identification, the prosecutor explained that he simply asked the question "to see whether [Allen] could identify [Starr] in the courtroom." On cross-examination, Allen confirmed that the first time he was asked to identify the young man "was here today."

As our supreme court has stated, rule 2.5(3) "is not a substitute for discovery." *State v. Lord*, 341 N.W.2d 741, 743 (Iowa 1983). Instead, its "purpose is to alert the defendant *generally* to the source and nature of the evidence against

him." *Id.* The minutes did that here. We accordingly conclude that the district court did not abuse its discretion in overruling Starr's objection.

## III. Juvenile Adjudication

This leaves us with Starr's claim that the district court erred in finding that his juvenile delinquency adjudication for a felony offense was admissible to prove that he violated Iowa's felon-in-possession statute, Iowa Code section 724.26. This statute provides:

> A person who is convicted of a felony in a state or federal court, *or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult*, and who knowingly has under the person's dominion and control or possession, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of a class "D" felony.

Iowa Code § 724.26(1) (emphasis added). In a motion in limine, Starr sought to exclude his juvenile delinquency adjudication under Iowa Code section 232.55(2)(a), which states:

> *Adjudication and disposition proceedings under this subchapter are not admissible as evidence against a person in a subsequent proceeding in any other court before or after the person reaches majority* except in a proceeding pursuant to chapter 229A or in a sentencing proceeding after conviction of the person for an offense other than a simple or serious misdemeanor.

(Emphasis added.)

The district court overruled Starr's objection,[2] finding that although there is tension between the statutes, "the inclusion in the text [of] § 724.26(1) of the phrase 'or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult' reasonably implies an exception to § 232.55(2) for

---

[2] After Starr's motion in limine was denied, he agreed to stipulate that he "was previously adjudicated delinquent of a felony offense."

proof of such an adjudication, in a prosecution under § 724.26(1)."  Starr challenges that ruling from three angles: statutory interpretation, infringement on his state constitutional right to bear arms, and an evidentiary claim.  But the only claim preserved for our review is Starr's statutory-interpretation challenge.  *See State v. Hanes*, 981 N.W.2d 454, 460 (Iowa 2022) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)).  We review that claim for the correction of errors at law.  *Sievers*, 20 N.W.3d at 208.

"The threshold question in any dispute over the meaning of a statute is whether it contains an ambiguity."  *Citizens' Aide/Ombudsman v. Miller*, 543 N.W.2d 899, 902 (Iowa 1996).  "In interpreting a statute, we first consider the plain meaning of the relevant language, read in the context of the entire statute, to determine whether there is ambiguity.  If there is no ambiguity, we apply that plain meaning.  Otherwise, we may resort to other tools of statutory interpretation." *State v. Doe*, 903 N.W.2d 347, 351 (Iowa 2017) (internal citations omitted).

When the two statutes at issue here are considered separately, they are not ambiguous.  But together, on these facts, they are.  *See Citizens' Aide/Ombudsman*, 543 N.W.2d at 902 (finding a "latent conflict" in two statutes that were not ambiguous on their own but "only when they are jointly brought to bear on the facts").  So we turn to our familiar tools of statutory interpretation.  In a thorough and well-reasoned ruling, the district court used five of these tools: the predicate-act canon, the harmonious-reading canon, the presumption against

ineffectiveness, legislative history, and the absurdity doctrine.[3]  We focus on the harmonious-reading canon, although we briefly touch on some of the others.

"If more than one statute relating to the subject matter at issue is relevant to the inquiry, we consider all the statutes together in an effort to harmonize them." *In re Det. of Geltz*, 840 N.W.2d 273, 275 (Iowa 2013) (citation omitted); *see also* Iowa Code § 4.7 (requiring conflicting statutes to "be construed, if possible, so that effect is given to both"); *Kelly v. State*, 525 N.W.2d 409, 411 (Iowa 1994) ("[I]f two statutes conflict, courts must attempt to harmonize them in an effort to carry out the meaning and purpose of both statutes."). "Harmonization of the applicable statutes evidences the true intent of the legislature." *State v. Carpenter*, 616 N.W.2d 540, 542 (Iowa 2000) (en banc).  And "our primary goal is to give effect to the intent of the legislature." *Geltz*, 840 N.W.2d at 275 (citation omitted).

In resolving the conflict between the two statutes, the district court reasoned that

> [t]o read § 232.55(2) and § 724.26(1) in the way proposed by [Starr] would render them inharmonious—§ 232.55(2) would render § 724.26(1) as practically unenforceable against a person with a qualifying prior delinquency adjudication.  But to read the "or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult" language in § 724.26(1) as creating an implied exception to § 232.55(2) harmonizes those statutes.

---

[3] Another tool that was not cited by the court, or relied upon by the parties, also supports the court's ruling: the familiar canon that "[t]o the extent there is a conflict or ambiguity between specific and general statutes, the provisions of the specific statutes control." *MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 883 (Iowa 2020) (cleaned up); *see also* Iowa Code § 4.7 ("If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both.  If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision."); *State v. Hess*, 983 N.W.2d 279, 287 (Iowa 2022) (applying the general/specific canon).

We reached the same conclusion in *State v. Johnson*, No. 06-1407, 2007 WL 4191968, at *2 (Iowa Ct. App. Nov. 29, 2007), where we held that

> section 724.26, by its terms, clearly and without ambiguity, excepts an adjudication from the application of section 232.55(2). . . . Its admissibility is built into the statute. For the statute to effectuate its purpose, the adjudication of delinquency is presumed to be admissible and relevant.

As the State argues, section 724.26(1) "criminalizes the possession of a firearm by a person, like Starr, who has been adjudicated delinquent based on conduct that would constitute a felony if committed by an adult." To prosecute such conduct, the State must prove that the defendant has been "adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult." Iowa Code § 724.26(1). Excluding evidence of a qualifying delinquency adjudication under section 232.55(2) "would render a portion of [section 724.26(1)] void and superfluous" and lead to an "absurd result," which we must avoid. *Johnson*, 2007 WL 4191968, at *2; *see also State v. Pickett*, 671 N.W.2d 866, 870 (Iowa 2003) ("[S]tatutes are interpreted in a manner to avoid absurd results and to avoid rendering any part of the enactment superfluous." (internal citations omitted)). It would also conflict with the purpose of section 724.26, which "is to prohibit potentially harmful persons from possessing firearms because the legislature considers them dangerous." *Johnson*, 2007 WL 4191968, at *2 (citing *State v. Buchanan*, 604 N.W.2d 667, 669 (Iowa 2000)). We generally "try to interpret statutes so they are reasonable and workable." *Doe*, 903 N.W.2d at 353. Interpreting section 724.26(1) as creating an implied exception to section 232.55(1)'s evidentiary exclusion accomplishes that goal and, as the district court found, harmonizes the statutes.

Starr approaches harmonization from a different angle on appeal. He argues that the two statutes can be reconciled with one another if section 724.26(1) "is deemed applicable solely to juveniles under 'youthful offender status.'" Starr reasons that a "youthful offender" who is waived into adult court and "either found or pleads guilty will be *adjudicated, not convicted*."[4] (Emphasis added.) Pointing to the phrase "or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult" into section 724.26(1), Starr contends "the intent of the legislat[ure] was to criminalize the possession of firearms of juveniles, who were waived into adult court, and are found guilty, but avoided conviction as they were 'adjudicated as juveniles.'" We disagree.

In construing a statute, "[w]e look to what the legislature actually said, not to what it should or could have said." *Miller v. Marshall Cnty.*, 641 N.W.2d 742, 748 (Iowa 2002). "We may not, under the guise of construction, enlarge or otherwise change the terms of the statute." *State v. Schweitzer*, 646 N.W.2d 117, 120 (Iowa Ct. App. 2002). If the legislature had wanted section 724.26(1) to only apply to youthful offenders—which is a special status under our juvenile justice laws—it would have said so. *See* Iowa Code § 907.3A (youthful offender status). Because it did not, we reject Starr's attempt to add that language to the statute.

---

[4] We question whether this premise is correct. *See* Iowa Code § 232.45(1) (stating that a motion to waive jurisdiction to prosecute a child as a youthful offender must be filed before an adjudicatory hearing on the delinquency petition); *id.* § 907.3A(1) ("An adjudication of delinquency entered by the juvenile court at disposition for a public offense shall not be deemed a conviction and shall not preclude the subsequent entry of a deferred judgment or sentence, *conviction*, or sentence by the district court." (emphasis added)).

Finding no error in the district court's statutory interpretation of Iowa Code sections 232.55(2) and 724.26(1), we affirm its decision that Starr's juvenile adjudication for a felony offense was admissible at his criminal trial.

**AFFIRMED.**