George W. JORDAN and Sandra K. Jordan, Appellees,

v.

IOWA DEPARTMENT OF TRANSPORTATION, Appellant.

No. 89–1436.

Supreme Court of Iowa.

April 17, 1991.

Thomas J. Miller, Atty. Gen., Charles J. Krogmeier, Deputy Atty. Gen., and Mark Hunacek, Asst. Atty. Gen., for appellant.

James V. Sarcone, Jr., and James V. Sarcone, Sr., Des Moines, for appellees.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

CARTER, Justice.

The Iowa Department of Transportation (IDOT) appeals from an adverse judgment granted to plaintiffs, George W. Jordan and Sandra K. Jordan. Plaintiffs' action was based on an alleged breach by IDOT of a contract regulating the height of the median strip in front of their mobile home sales business. The case was tried to the court which found for the plaintiffs and awarded them damages. After considering IDOT's arguments for reversal, we affirm the district court's judgment with some modification as to the amount of damages.

Plaintiffs were the owners of a mobile home dealership with an entrance on Southeast Fourteenth Street in Des Moines. At this location, Southeast Fourteenth Street is State Highway 169. In May of 1982, IDOT initiated a road construction project on this highway directly in front of plaintiffs' business.

IDOT negotiated with plaintiffs for a temporary easement for entry onto plaintiffs' property during construction. At the time of these negotiations, plaintiffs became aware that the project contemplated installation of a median strip which would impede southbound mobile home deliveries from gaining access to plaintiffs' sales lot. Plaintiffs sought to negotiate with IDOT for a lowering of the median's height at the point in which it passed in front of their business entrance.

The parties entered into a May 12, 1982, agreement in which plaintiffs granted IDOT a temporary construction easement over their property measuring approximately twenty-one feet by seventy-two feet. In exchange for this easement, IDOT agreed that the median in front of plaintiffs' business would be three inches in height rather than six inches as originally proposed.

On July 30, 1982, before construction of the median strip, plaintiffs sold the affected land and business on an installment contract to Robert and Pamela Jones. The Joneses were the equitable owners and in possession of this property when IDOT constructed a median strip on Highway 169 parallel to the entire business frontage of the Jordan/Jones property. In constructing the median, IDOT, acting contrary to the written agreement with plaintiffs, followed its original plan for a six-inch-high median.

In December 1984, the Joneses defaulted on their contract. Robert Jones testified at the trial that the installation of the six-inch median was the reason for the Joneses' decision to simply walk away from their contract with the plaintiffs. After the Joneses defaulted, plaintiffs reacquired the property by forfeiture under Iowa Code chapter 656. They subsequently resold the property in November 1985 for substantially less than the amount which the Joneses had paid.

In October 1986, plaintiffs commenced the present action, seeking damages for IDOT's alleged breach of the median agreement. After hearing the evidence, the district court found that IDOT had breached the agreement and awarded plaintiff damages of $75,000.

In appealing the district court's judgment, IDOT contends that (1) plaintiffs lost any interest in the median agreement when they sold the property to the Joneses, (2) the agreement was void as against public policy, and (3) the court applied an improper measure of damages and included an unwarranted award of interest. We consider each of these claims. Other facts which are pertinent to the appeal are mentioned in our discussion of the legal issues presented.

I. *Whether the Sale of the Property Deprived Plaintiffs of any Right to Seek Damages Based on the Construction of the Median.*

We first consider IDOT's contention that plaintiffs are not the proper parties to as-

sert a claim based on the median agreement. It argues that, in selling the property and business to the Joneses, plaintiffs divested themselves of all interest in the property other than a security interest. From this premise, it urges that plaintiffs had no interest in the mobile home sales business at the time the alleged breach of contract occurred. In attempting to illustrate this contention, IDOT suggests that, had the installment sales contract gone as scheduled, plaintiffs could not possibly complain about the construction of the median.

Our first reaction to IDOT's argument is to observe that plaintiffs' sales contract with the Joneses did not go as scheduled. Plaintiffs and the Joneses have attributed this circumstance to the effect which the six-inch median strip had on access to the mobile home sales lot. IDOT strongly disputes that the median strip was the sole reason for the Joneses' default. In resolving IDOT's challenge to plaintiffs' standing to sue, we do not believe that the reason for the Joneses' default is controlling.

■ The significant circumstance in plaintiffs' right to sue on the contract is that they did reacquire both the property and the business and thereafter their use of the property was adversely affected by the six-inch median. We fail to see why under these circumstances plaintiffs should not be permitted to recover for breach of an agreement which was made for their benefit. *See Becker v. Central States Health & Life Co.,* 431 N.W.2d 354, 357 (Iowa 1988); *Zimmerman v. Kile,* 410 N.W.2d 262, 264–65 (Iowa 1987); *Linnemann v. Kirchner,* 189 Iowa 336, 339, 178 N.W. 899, 900 (1920). Plaintiffs' right to enforce this agreement should logically exist at any time that their interest under the agreement and their interest in the property affected by the agreement coincide.

Whether the Joneses ever had any basis for relying on the Jordan–IDOT agreement is not an issue in the present case. Their right to do so, if it did exist, could only be based on an equitable assignment of plaintiffs' contractual rights against IDOT. Because no actual assignment of those rights took place, this could only have occurred as an incident of the sale of the property. We believe that, if any rights under the Jordan–IDOT agreement temporarily inured to the Joneses, those rights were restored to plaintiffs as a result of the forfeiture.

IDOT's reliance on *Farmers & Merchants Savings Bank v. Farm Bureau Mutual Insurance Co.,* 405 N.W.2d 834 (Iowa 1987), and *Risken v. Clayman,* 398 N.W.2d 833 (Iowa 1987), is misplaced. The contractual interest which was extinguished in those cases by reason of the vendor's forfeiture was narrowly related to the purchase price. In the present case, plaintiffs' contractual interest relates to the use of the property both before and after the aborted sale to the Joneses.

## II. Whether the Agreement for a Three–Inch Median Strip was Void as Against Public Policy.

IDOT urges that the agreement between it and plaintiffs to build a three-inch median should not be enforced because it essentially amounts to contracting away the police power of the state. From this premise, it reasons that the agreement is void as against public policy. In support of this contention, it relies upon the decision of this court in *Williamson v. Chicago, Rock Island & Pacific Railway,* 53 Iowa 126, 4 N.W. 870 (1880), and decisions from other jurisdictions. Illustrative of these decisions is *Board of County Road Commissioners v. Michigan State Highway Commission,* 79 Mich.App. 505, 261 N.W.2d 329 (1978), where the court refused to enforce a contract requiring the State Highway Commission to build a highway in a specified manner. As a basis for this result, the Michigan court concluded that the duty of the highway commission to the state as a whole superseded and voided the contract. *Id.* at ——, 261 N.W.2d at 332–33.

■ We conclude that the public-policy defense upon which IDOT relies is not applicable to defeat the trial court's award in the present case. The safety considerations upon which it relies in seeking to justify its change of position do not in our opinion provide a bright line specification

as to how the median should have been constructed. The proper median height was a discretionary decision for IDOT officials. We believe that administrative agencies may enter into binding agreements with respect to discretionary actions if the subject matter is within the scope of their authority and such agreements are not contrary to the public interest.

Since our decision in *Simkins v. City of Davenport*, 232 N.W.2d 561, 566 (Iowa 1975), the denial of business access may be a compensable taking even if it occurs as a result of the state's exercise of its police power. No hard and fast rule can be stated as to whether an abutting property owner has been denied access that is reasonable. In most instances, this becomes a question of fact rather than of law. *Id.* Given the uncertainty which exists as to the state's liability for access interference, we believe the authorized representatives of IDOT could validly contract with respect to the degree of interference to be imposed.

### III. *Whether the Evidence Supports the Award of Damages.*

IDOT challenges the evidentiary support for the award of $75,000 as compensable damages. It also questions the sufficiency of the trial court's findings on damages, the measure of damages employed, and the award of interest on the judgment.

A. *Adequacy of the court's findings on damages.* IDOT asserted in a posttrial motion under Iowa Rule of Civil Procedure 179(b) that the court's findings of fact were not sufficiently specific with respect to the theories employed in awarding damages. In ruling on that motion, the court declined to expand its findings. IDOT now reasserts its contention concerning the inadequacy of the damage findings.

■ Although greater specificity would have aided this court in determining how the district court arrived at the amount of damages awarded, this failure is not critical given the nature of plaintiffs' proof. We have recognized that an absence of findings may be cured in some cases by reasoning backwards from the result to the

issues and evidence. *City of Des Moines v. Huff*, 232 N.W.2d 574, 578–79 (Iowa 1975).

Plaintiff attempted to establish damages through the testimony of Arthur Frahm, a real estate appraiser who was qualified as an expert witness. This witness testified as follows with respect to the measure of plaintiffs' loss:

Q. And would you state to the Court how you approached this matter? A. Yes, sir. First of all, the property was sold by Mr. Jordan to Mr. Jones, I believe, on a contract. And this contract was one that was at a preferential interest rate to Mr. Jones, with no down payment, with initial payments at $3509.45 per month for the first 25 months and then—that was at 11%, and then the interest rate increased to 13½% and the monthly payments increased to $4,070.20 for the remainder of the contract period. At that time interest rates were, for mortgages, were typically 13 to 15 percent, so this was an advantageous sale to Mr. Jones, and particularly from the standpoint of no down payment. So I calculated a cash equivalent value of that contract, to put it on the basis of cash, and then calculated the balance at the time the—at the end of the payments, the default of the contract. And at that time he had a balance of $277,969. And he held this for 11 months without selling the property. Then eventually sold the property for $226,500. This was after the six-inch median had been installed. So what I did, I calculated interest at the rate of 10% nominal rate per annum, that would be over an 11–month period, and added that to the loss in value between the cash equivalent value of the contract, that balance, and the sale price, and that gave me a total figure that I calculated was due to Mr. Jordan as his loss.

Q. And what was that figure, Mr. Frahm? A. It rounds to $77,000.

In comparing the district court's damage award with the testimony of plaintiffs' expert witness, we can only conclude that, while the witness rounded plaintiffs' damages off to $77,000, the district court

rounded this amount to $75,000. We are not left to speculate as to how the district court arrived at the amount of damages awarded.

**B.** *Sufficiency of the evidence to support the damage award.* We next consider whether Mr. Frahm's expert testimony supports the district court's award under a proper measure of damages. In determining the measure of damages to be awarded, we are greatly influenced by the fact that a consideration for the agreement was the resolution of plaintiffs' potential taking claim based on loss of access to their business. For this reason it does not do violence to principles of contract remedies to measure damages by the effect of IDOT's breach on the value of the property.

We conclude that Mr. Frahm's calculation of the $277,969 "cash equivalent value" of the contract was a shorthand way of fixing the cash market value of the property as evidenced by the sale to the Joneses. That sale took place when the parties contemplated a three-inch median strip. The $226,500 received by plaintiffs in the November 1985 sale was adopted by Mr. Frahm as the value of the property with a six-inch median strip. This difference of $51,469 was found by Mr. Frahm to be reflective of plaintiffs' damages. IDOT's expert witness testified to the difference in the value of the property with a six-inch median strip as opposed to a three-inch median strip and fixed that sum at $12,000. Obviously, the district court preferred the testimony of plaintiffs' expert to that of IDOT's expert. We do not disturb that portion of the damage award.[1]

Frahm's conclusion as to plaintiffs' total damages also included the sum of $25,480 as interest on the higher of the two valuations for the eleven-month period between forfeiture of the Jones contract and resale of the property. Although the district court also approved that element of damages, we do not. Plaintiffs had the use and enjoyment of the property during this eleven-month period and therefore no basis exists for compensating them for any additional loss above its diminution in value. When a segregated item of damage which has been awarded is determined to have been improper on appeal, it may simply be eliminated and the balance of the judgment affirmed. *Bossuyt v. Osage Farmers Nat'l Bank,* 360 N.W.2d 769, 778 (Iowa 1985); *Drake v. Block,* 247 Iowa 517, 524, 74 N.W.2d 577, 582 (1956).

**C.** *The award of prejudgment interest.* The district court awarded plaintiffs interest on the judgment from the date the petition was filed. IDOT, relying on Iowa Code section 25A.4 (1989), argues that any award of interest prior to the entry of judgment is improper. We believe this argument is misplaced.

Section 25A.4 is applicable to tort claims brought under the auspices of chapter 25A. While the definition section of that chapter is broad, it is necessarily limited to those claims which, as a condition precedent to the bringing of the action, must be considered by the State Appeal Board. Plaintiffs' breach-of-contract claim does not fit within this category.

An award of prejudgment interest in a contract claim against the state was upheld in *Hallett Construction Co. v. Iowa State Highway Commission,* 261 Iowa 290, 299, 154 N.W.2d 71, 76 (1967). Indeed, in the *Hallett* case, substantial precommencement interest was awarded. Plaintiffs have not challenged the district court's refusal to award precommencement interest in the present case, and consequently, we approve the award of interest from the date of filing the petition.

Due to the item of nonrecoverable damage identified in division III.B. of this opinion, the award of damages must be reduced

---

**1.** IDOT asserts that any recovery based on the reduced value of the property as a result of the six-inch median strip should be diminished by the amount of the payments which plaintiffs received from the Joneses. We disagree. The Joneses made no down payment. The periodic payments which they made to plaintiffs may be attributed to the Joneses' enjoyment of the property during the time that they occupied it. As such, it does not diminish plaintiffs' loss measured from the time they regained possession of the property.

to $51,469. The judgment of the district court is so modified and otherwise affirmed. The clerk of the district court shall correct the judgment to reflect this modification. The judgment shall draw interest at the rate of ten percent per annum from the date of the filing of the petition. Costs on appeal are assessed seventy-five percent to appellant, twenty-five percent to appellee.

AFFIRMED AS MODIFIED.