**MARCO DEVELOPMENT CORPORATION,**
Appellant,

v.

**CITY OF CEDAR FALLS,**
Iowa, Appellee.

No. 90–815.

Supreme Court of Iowa.

July 17, 1991.

Rehearing Denied Sept. 18, 1991.

Mark L. Tripp and Robert A. Sims of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellant.

Ivan T. Webber and Steven K. Gaer of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, and Judd E. Truax, Cedar Falls, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

In 1979, Marco Development Corporation and the City of Cedar Falls signed an "Agreement for Site Plan Approval" which, Marco claims, obligated the City to widen a street adjacent to Marco's proposed Thunder Ridge Mall. After the execution of the contract, the City elected a new mayor. The City's participation in the Thunder Ridge Mall project, which had been an issue in the mayoral campaign, was terminated. Marco sued the City for breach of contract,[1] but the district court ruled that the contract was ultra vires on the part of the City and granted the City's summary judgment motion. We affirm.

The site plan agreement included this provision:

7. The owner [Marco] will pay the entire cost of materials for traffic signal installation at U.S. Route 20 and Magnolia Drive. The entire expense of any widening or increased capacity requirements will be borne by *parties other than the owner.*

(Emphasis added.)

This provision does not expressly require the City to widen the street, only that the cost "will be borne by parties other than" Marco. Marco argues that this was intentionally left vague, at the request of the City, because the City held out some hope that state or federal funds might be provided. For purposes of its motion for summary judgment, the City concedes this point.

---

1. Marco also claimed that its transfer of land to the City under the contract, in exchange for the City's agreements, had failed for lack of consideration and requested an order of reconveyance.

## I. *The Ultra Vires Argument.*

The City argues that the purported contract is ultra vires and void as an impermissible restriction on the City's governmental powers. In effect, it claims that Marco assumed the risk of nonperformance by the City by dealing with it in an area of purely governmental activity such as street construction.

The summary judgment record reveals that the City's proposed involvement in the mall was controversial from the beginning. The City counsel approved, and the mayor signed, the agreement over the objections of the City staff and the local planning and zoning commission. The mall project became a political issue, and the mayor who signed the agreement was defeated by a candidate who openly opposed the City's involvement in the project.

■ A city may not contract for the performance of its governmental, as opposed to its proprietary, functions.

A municipal corporation may, by contract, curtail its right to exercise functions of a business or proprietary nature, but, in the absence of express authority from the legislature, such a corporation cannot surrender or contract away its governmental functions and powers, and any attempt to barter or surrender them is invalid. Accordingly, a municipal corporation cannot, by contract, ordinance, or other means, surrender or curtail its legislative powers and duties, its police power, or its administrative authority.

62 C.J.S. *Municipal Corporations* § 139, at 281–82 (1949).

It has also been noted that:

The doctrine of ultra vires has, with good reason, been applied with greater strictness to municipal bodies than to private corporations and, in general, a municipality is not estopped from denying the validity of a contract made by its officers where there has been no authority for making such a contract. Contracts wholly beyond the powers of a

---

This count, and a trespass count, were not involved in the summary judgment proceedings, and are not before us now.

municipality are void, and when a contract is made by a municipal corporation which is not warranted by the statutory authority conferred upon it, the governing body of the corporation has at all times the right to declare the contract void and to refuse compliance therewith.... It is generally held that when a contract has been entered into by a municipal corporation with respect to a subject matter which was not within its corporate powers, the corporation cannot be held liable on the contract regardless of whether the other party thereto has fully carried out its part of the agreement. To a like effect, a municipal corporation cannot be held liable in damages by one who entered into a contract with the corporation which was beyond its powers, for the loss he sustained when the performance of the contract was prevented.

56 Am.Jur.2d *Municipal Corporations* § 503, at 554–56 (1971). One who contracts with a city is bound at his peril to know the authority of the officers with whom he deals, and a contract unlawful for lack of authority, although entered in good faith, creates no liability on the part of the city to pay for it, even in *quantum meruit. Id.* § 504, at 557.

The governmental-proprietary distinction has been criticized, in part, because it is often difficult to categorize municipal activities which possess features of both. *See* Griffith, *Local Government Contracts: Escaping from the Governmental/Proprietary Maze*, 75 Iowa L.Rev. 277, 318–19 (1990).

It has also been noted that:

Local governments in recent years have experimented with private sector entrepreneurial techniques and more frequently have sought out private contractors to fulfill those public functions that can be performed more efficiently, quickly, and cheaply by the private sector. Moreover, municipalities have become involved directly in joint ventures with private businesses and have not hesitated to ask for a share of the profits in return for their participation. This increased interaction between public entities and the private sector has highlighted the need for a coherent set of principles to guide courts in assessing the validity of municipal contracts.

*Id.* at 280–81.

■ In this case, the City was not involved in an entrepreneurial activity or joint enterprise which might arguably be a proprietary, or even a hybrid, function. Its proposed street widening was clearly a legislative function, *Oakes Constr. Co. v. City of Iowa City*, 304 N.W.2d 797, 808 (Iowa 1981), and the City was not free to bind itself by contract in the exercise of its legislative functions.

While our court has apparently never passed on this specific issue, similar facts were presented in the Florida case of *P.C.B. Partnership v. City of Largo*, 549 So.2d 738 (Fla.Dist.Ct.App.1989). In that case, the developer sued the city for specific performance of a development agreement. The court held that the contract was ultra vires and void, stating:

The agreement purports to restrict the City's ability to decide whether to build a road, install a traffic device, and permit the development of a parking lot and a storm drain connection. The City does not have the authority to enter such a contract, which effectively contracts away the exercise of its police powers.

*Id.* at 741.

Similarly, in *Rockingham Square Shopping Center, Inc. v. Town of Madison*, 45 N.C.App. 249, 262 S.E.2d 705 (1980), the town and a developer agreed that the town would construct an access road at its expense as an inducement for the plaintiff to construct a shopping center development in the town. The town decided it was unable to open the road, apparently due to difficulties in negotiating the necessary rights-of-way, and declined to perform. The developer sued the town for breach of contract. The court noted the responsibility of municipalities in regard to opening new streets and extensions of streets and noted that,

[i]f a contract does restrict the discretionary authority of the governing body of a municipality, it is ultra vires and of no legal effect.

The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. Thus, there can be no right of action upon the contract for its breach, and no performance on either side can give it any validity.

*Id.* at 707.

In *Jordan v. Iowa Department of Transportation,* 468 N.W.2d 827 (Iowa 1991), we upheld a claim for damages in favor of an abutting owner when the Department of Transportation breached its contract regarding the height of a median strip in front of the plaintiffs' business.

The department in *Jordan* argued that the contract was unenforceable because it impinged on the exercise of the state's police power. We rejected this argument, primarily on the ground that denial of a business access may be a compensable taking, even in the exercise of the state's police power. We held that the contract between Jordans and the Department of Transportation regarding the height of the median was a matter of contract in respect to the taking and that "IDOT could validly contract with respect to the degree of interference to be imposed." *Id.* at 831.

In this case, there is no claim of a taking, nor that the contract was in furtherance of a contract to settle a taking claim. *Jordan* must therefore be distinguished.

■ Marco complains that denial of recovery, when it has performed all of its obligations under the agreement, would be inequitable. We have rejected such an argument in a similar context. *See Madrid Lumber Co. v. Boone County,* 255 Iowa 380, 387, 121 N.W.2d 523, 527 (1963). When Marco and the City signed the agreement, the City's involvement in the project was questionable, and under these circumstances, Marco dealt with the City at its peril. We reject Marco's equity claim. As we said in *Madrid Lumber,*

[c]ourts of equity can no more disregard statutory requirements than can a court of law. They are bound by positive provisions of a statute equally with courts of law and where the contract is void because not in compliance with express statutory provisions, a court of equity cannot give validity to the contract.

*Id.* While the present case does not involve a statutory violation as in *Madrid Lumber,* we believe the same principles are applicable when a purported contract is void for other reasons.

Marco argues that our home rule amendment, Iowa Const. art. III, § 38A, granted the City authority to contract with it. This amendment grants to cities "home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government...."

■ The City responds that the home rule amendment may not be applied so broadly; authority to bind successive legislative bodies could not be granted by the legislature, which itself is prohibited from doing so. *See Board of Educ. v. Bremen Township Rural Indep. School Dist.,* 260 Iowa 400, 408, 148 N.W.2d 419, 424 (1967) ("No citation of authority is needed for the proposition that one legislature cannot bind future legislatures upon ... policy matters.... The same rule applies to boards or other groups properly delegated legislative authority.").

We believe that the same limitation must be recognized as to the legislature's authority to grant to a city, through home rule, the power to contract for the exercise of its governmental or legislative authority. Even if the legislature were capable of doing so, which we doubt, we do not believe it did so here. The home rule amendment conveys power for home rule "not inconsistent with the laws of the general assembly." Allowing a city to contract away its governmental authority, we believe, would cross that line.

We conclude that the district court properly found the contract to be ultra vires and void, and affirm the summary judgment.

## II. *The Rule 179(b) Argument.*

Marco contends that other arguments to support its claim of error, raised by it in a rule 179(b) motion, were erroneously reject-

ed by the court on the ground that the motion was not timely.

Iowa Rule of Civil Procedure 179(b) provides that a motion for enlargement must be filed within the time allowed for a motion for a new trial. Rule 179(b) must thus be read in conjunction with rule 247, which sets the time for a motion for new trial. *Doland v. Boone County*, 376 N.W.2d 870, 876 (Iowa 1985); *see also Qualley v. Chrysler Credit Corp.*, 261 N.W.2d 466, 469 (Iowa 1978).

Under rule 247, motions for new trial must be filed within ten days after the verdict or decision unless the court, for good cause, grants an additional time not to exceed thirty days. Under rule 82(d), time requirements for filing are tolled when service is made, provided the actual filing is done within a reasonable time thereafter.

Marco served the City ten days after the trial court filed its ruling and, on the same day, mailed to the clerk of court its motion for enlargement. The motion was file stamped by the clerk of court the following day. Because the actual filing was done within a reasonable time after the service, rule 82(d) makes the filing date timely under rule 247. The district court erred in its conclusion that the motion was untimely.

█ Nevertheless, we believe that the issues raised in the motion fail as a matter of law. Marco contends that the court erred in failing to rule on two additional issues: (1) whether the agreement was void for lack of an essential party, and (2) whether Marco's claim was barred by "the applicable Statute of Limitations." Because we find Marco's claim is barred on other grounds, it is not necessary for us to address these issues. Any error by the trial court in refusing to consider the rule 179(b) motion, therefore, was harmless.

We find no error in the trial court's granting of summary judgment and therefore affirm.

AFFIRMED.