Gregg D. MILLER, Appellant,

v.

MARSHALL COUNTY and Marshall
County Board of Supervisors,
Appellees.

No. 00–0341.

Supreme Court of Iowa.

Feb. 27, 2002.

Dennis D. Jerde of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellant.

Chester C. Woodburn III of Hansen, McClintock & Riley, Des Moines, and William B. Serangeli of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney & Shindler, P.C., Des Moines, for appellees.

CADY, Justice.

Under Iowa's county home rule statute, a county is not authorized to lease real property when the lease payments are to be made payable from the general fund without first giving notice of the public's right to petition for a referendum if the principal amount of the lease exceeds certain limits based on the population of the county. *See* Iowa Code § 331.301(10)(e)(1), (2) (1993). This appeal requires us to decide if this statute authorizes a county to enter into a lease of real property without first following the petition procedures when the principal amount of the lease over the entire term exceeds the threshold limit under the statute but is below the limit on an annual basis. The

district court held the county was not authorized to enter into the lease and that the lease was unenforceable. We affirm the district court on our review.

## I. Background Facts and Proceedings.

Gregg Miller owns a building in Marshalltown, Iowa, known as the "Rude Building." He purchased the building after prolonged discussions with the Marshall County Board of Supervisors (Board). The Board wanted Miller to purchase the building and lease it to Marshall County (County) so the County could consolidate its county offices and operations located in various places throughout Marshalltown into a central location.

The Board eventually agreed to lease the Rude Building from Miller, and Miller agreed to purchase the building and make substantial renovations to accommodate the needs of the county. The Board and Miller entered into a written lease agreement on November 28, 1994. The lease covered a period of ten years, with an annual rent of $424,666.00. The lease was to commence once Miller completed the renovations, which the parties agreed would be no later than July 1, 1997. The lease also gave the County the option to renew the lease, as well as the right of first refusal in the event Miller desired to sell the building during the term of the lease. The lease also contained a termination clause in the event of a fire or other casualty. Additionally, the lease included a separability clause. This clause provided:

> Landlord and Tenant intend and believe that each provision in this Lease comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Lease is found by a court of law to be in violation of any local, state or federal ordinance, statute, law, administrative decision or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Lease to be illegal, invalid, unlawful, void, or unenforceable as written, then it is the intent of both Landlord and Tenant that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid, and enforceable, that the remainder of this Lease shall be construed as if such illegal, invalid, unlawful, void, or unenforceable portion, provision or provisions were not contained herein, and that the rights, obligations and interests of Landlord and Tenant under the remainder of this Lease shall continue in full force and effect.

In the summer of 1995, after Miller began renovating the building to accommodate the county's needs, the Board determined it had no authority to enter into the lease without notifying the public of its right to petition for an election. The Board then instituted proceedings to enter into a lease by giving the appropriate public notice. *See id.* § 331.301(10)(e)(2)(a). The notice resulted in the timely filing of a petition with a sufficient number of eligible signatures, forcing the Board to either abandon the lease or direct the county commissioner of elections to call a special election on the question whether to enter into the lease. *See id.* § 331.301(10)(e)(2)(b). The Board determined a referendum would not succeed and notified Miller it was abandoning the lease.

Miller filed a petition for damages against the County and the Board based on the theories of breach of contract, negligent misrepresentation, promissory estoppel, unjust enrichment, detrimental reli-

ance, quantum meruit, breach of fiduciary duty, and negligence. The County and the Board moved to dismiss the action. The district court dismissed all the claims against the County and the Board except breach of contract and negligent misrepresentation. The County and the Board then moved for summary judgment on the two remaining claims.

The district court granted summary judgment. It found Miller had no claim for breach of contract because the lease was void. It held the Board had no authority to enter into the lease at the time it was executed, and did not subsequently acquire authority pursuant to the governing statutes. The district court found the separability clause did not make the obligation to pay rent under the lease enforceable up to the amount of the statutory spending limit. The district court also dismissed the negligent misrepresentation claim.

Miller appeals from that portion of the summary judgment decision that dismissed his claim for breach of contract. He claims the Board had authority to enter into the lease because the statutory spending limits only applied to the principal amount of the annual rent payments and the district court erred by interpreting the statute to mean the spending limits applied to the aggregate of all payments under the term of a lease. Miller also claims the district court erred when it refused to enforce the lease for one year under the separability clause.

## II. Standard of Review.

 We review the decision to grant summary judgment for errors at law. *First State Bank v. Clark*, 635 N.W.2d 29, 30 (Iowa 2001); *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 683 (Iowa 2001). Likewise, we review issues of statutory interpretation for errors. *State v.*

*Iowa Dist. Ct.*, 616 N.W.2d 575, 578 (Iowa 2000); *State v. Schultz*, 604 N.W.2d 60, 62 (Iowa 1999). When the facts underlying a summary judgment ruling are not disputed, as in this case, our task is to determine whether the district court correctly applied the law to the undisputed facts. *First State Bank*, 635 N.W.2d at 30; *Nicodemus v. Milwaukee Mut. Ins. Co.*, 612 N.W.2d 785, 787 (Iowa 2000).

## III. Section 331.301(10)(e).

 Section 331.301 frames the general scope of a county's power, and sets explicit limits on the county's authority to act. *Goodell v. Humboldt County*, 575 N.W.2d 486, 492 (Iowa 1998). In particular, section 331.301(10) limits the authority of a county to enter into lease and lease-purchase contracts. *See Madrid Lumber Co. v. Boone County*, 255 Iowa 380, 383, 121 N.W.2d 523, 525 (1963). Before a county may enter into a lease of real or personal property, it is required to follow the terms and procedures set forth in section 331.301(10). *See Lytle v. Ames*, 225 Iowa 199, 205, 279 N.W. 453, 456 (1938).

One statutory term requires the county to follow a special procedure to enter into a lease or a lease-purchase contract for real property payable from the general fund when "the principal amount of the lease or lease-purchase contract exceeds" certain enumerated limits. Iowa Code § 331.301(10)(e)(2). This term is one of two general requirements set forth in section 331.301(10)(e), which provides, in relevant part:

The board may authorize a lease or lease-purchase contract which is payable from the general fund and which would not cause the total of lease and lease-purchase payments of the county due from the general fund of the county in any future year for lease or lease-purchase contracts in force on the date of the authorization, excluding payments to

exercise purchase options or to pay the expenses of operation or ownership of the property, to exceed ten percent of the last certified general fund · budget amount in accordance with the following procedures. . . .

The statute then describes the procedures that must be followed by a county to · acquire authorization to enter into a lease or a lease-purchase agreement for personal property payable from the general fund, as well as lease agreements for real property payable from the general fund. *See id.* For leases involving personal property, the board must follow the same procedures applicable to the county for the issuance of essential county purpose bonds. *Id.* § 331.301(10)(e)(1); *see id.* § 331.443(2) (board must first provide notice of proposed action and receive objections from residents or property owners of the county). When the lease agreement involves real property, however, the same procedure applies only "if the principal amount of the lease-purchase contract does not exceed the following limits:"

 (a) Four hundred thousand dollars in a county having a population of twenty-five thousand or less.

 (b) Five hundred thousand dollars in a county having a population of more than twenty-five thousand but not more than fifty thousand.

 (c) Six hundred thousand dollars in a county having a population of more than fifty thousand but not more than one hundred thousand.

 (d) Eight hundred thousand dollars in a county having a population of more than one hundred thousand but not more than two hundred thousand.

 (e) One million dollars in a county having a population of more than two hundred thousand.

*Id.* § 331.301(10)(e)(1).

 ■ A different procedure, however, applies "to authorize a lease or lease-purchase contract for real property which is payable from the general fund if the principal amount of the lease or lease-purchase contract exceeds the limits. . . ." *Id.* § 331.301(10)(e)(2). This procedure requires the county to first give "notice of the meeting to discuss entering into the lease" and "the right to petition for an election." *Id.* § 331.301(10)(e)(2)(a). The notice must be published "at least ten days prior to the discussion meeting." *Id.* A second meeting must then be held by the county to propose taking action on the lease. *Id.* However, this second meeting must not be held less than thirty days following the discussion meeting. *Id.* If a petition is filed within thirty days after the first meeting, the board can either abandon the lease or request the county commissioner of elections to hold a special election on the propriety of entering into the lease. *Id.* § 331.301(10)(e)(2)(b). These procedural requirements seek to protect taxpayers from large public expenditures by providing them the opportunity to be heard on the matter. *See Wesley Retirement Servs., Inc. v. Hansen Lind Meyer, Inc.,* 594 N.W.2d 22, 26 (Iowa 1999).

 Thus, in a county with a population of more than 25,000 but less than 50,000, as in Marshall County, the election procedures must be followed if the principal amount exceeds $500,000. Iowa Code § 331.301(10)(e)(1)(b). If the principal amount exceeds $500,000, the board must institute proceedings before entering into the lease. *Id.* § 331.301(10)(e)(2)(a).

 ■ The question we face is whether the legislature intended the term "principal amount" to apply to the amount of the lease payments over the full term of the lease or over a one-year period of the lease. In interpreting statutes, we seek to

effectuate the legislature's intent. *IBP, Inc. v. Harker,* 633 N.W.2d 322, 325 (Iowa 2001); *Iowa Dist. Ct.,* 616 N.W.2d at 578. When a statute is unambiguous, we need not look beyond the plain meaning of the express statutory terms. *Schultz,* 604 N.W.2d at 62; 2A Norman J. Singer, *Sutherland Statutory Construction* § 46:01, at 123 (6th ed.2000) [hereinafter Singer]. However, if a statute is ambiguous, we must utilize the rules of statutory interpretation. *Schultz,* 604 N.W.2d at 62; *William C. Mitchell, Ltd. v. Brown,* 576 N.W.2d 342, 347 (Iowa 1998). We deem a statute to be ambiguous when reasonable minds could disagree as to its meaning. *State ex rel. Miller v. Midwest Pork, L.C.,* 625 N.W.2d 694, 700 (Iowa 2001); *Schultz,* 604 N.W.2d at 62. There are two ways in which an ambiguity may arise: from (1) the meaning of a specific term; or (2) the overall meaning of a statute when its provisions are considered in their totality. *IBP, Inc.,* 633 N.W.2d at 325; *William C. Mitchell, Ltd.,* 576 N.W.2d at 347.

In determining the particular meaning of a statutory term, we seek to find a reasonable construction that serves the statute's purpose. *State v. Anderson,* 636 N.W.2d 26, 35 (Iowa 2001). We look to what the legislature actually said, not to what it should or could have said. *Schultz,* 604 N.W.2d at 62; *Wesley Retirement Servs., Inc.,* 594 N.W.2d at 25. Thus, when the language of a statute is plain, we do not read words or restrictions into a statute that are not readily apparent from the express terms. *Wesley Retirement Servs., Inc.,* 594 N.W.2d at 25; 2A Singer, § 46:01, at 118. Furthermore, we may "consider the context in which the words are used." *William C. Mitchell, Ltd.,* 576 N.W.2d at 347.

Because the legislature did not define "principal amount," we give the term its common and ordinary meaning.

*IBP, Inc.,* 633 N.W.2d at 325; *State ex rel. Miller,* 625 N.W.2d at 699; 2A Singer, § 46:01, at 124, 129. In doing so, we may consider dictionary definitions. *William C. Mitchell, Ltd.,* 576 N.W.2d at 347–48. If the term has a well-settled legal meaning, we may assume the legislature was aware of this meaning when it enacted the statute. 2A Singer, § 46:04, at 152.

"Principal" has been defined as "[t]he capital sum of a debt or obligation, as distinguished from interest or other additions to it." Black's Law Dictionary 1192 (6th ed.1990). In other words, it is the "sum of money owed as a debt, upon which interest is calculated." The American Heritage Dictionary 985 (2d college ed.1985). It refers to the *aggregate* amount of an obligation. *See* Black's Law Dictionary 1073 (5th ed.1979) ("principal" refers to the total amount of debt due, *e.g.,* the face value of a mortgage or promissory note).

Nevertheless, Miller believes the legislature intended the limits to apply to the aggregate amount of the lease payments on a yearly basis. As support for his argument, he points to the language preceding the procedural requirements of section 331.301(10)(e) that imposes the threshold ten percent rule based upon "the total of lease and lease-purchase payments of the county due from the general fund of the county *in any future year* . . . ." Iowa Code § 331.301(10)(e) (emphasis added).

To the contrary, we do not find the language of the ten percent rule applicable to the procedural requirements at issue in this case. The ten percent requirement under section 331.301(10)(e) is an overall limitation on the amount of the general county funds that can be devoted to lease and lease-purchase payments. It is derived from the same limitations imposed upon cities. *Compare id.*

§ 364.4(4)(e), *with id.* § 331.301(10) (1991). This limitation means a county has no authority to enter into a new lease agreement payable from the general fund if the new lease agreement would "cause the total of lease and lease-purchase payments of the county due from the general fund of the county in any future year from lease or lease-purchase contracts in force" at the time authorization is sought to enter into the new lease "to exceed ten percent of the last certified general fund budget amount...." *Id.* § 331.301(10)(e) (1993). The phrase "in any future year" is not used to confine the cost component of a lease to a period of a year, but merely helps define the comprehensive limitation on the amount of general funds that can be devoted to all leases of property. The phrase only relates to the relationship between lease payments and the annual general fund budget, and only applies to the ten percent rule. This rule is unrelated to the procedural requirements applicable to lease agreements, and the use of the phrase "in any future year" by the legislature does not mean the principal amount limitations applicable to the procedural requirements were intended to apply on an annual basis. If anything, the absence of any reference to "years" in setting forth the procedural requirements for leases reveals the legislature did not intend to regulate the amount of the lease payments on a yearly basis. We assume the legislature intends different meanings when it uses different terms in different portions of a statute. *See* 2A Singer, § 46:06, at 194. If the legislature wanted to refer to annual payments in both qualifications, it could

have done so. *See State v. Wagner*, 596 N.W.2d 83, 87–88 (Iowa 1999). Moreover, Miller's interpretation requires us to concentrate on only one part of the statute, and to consequently ignore our rules of statutory interpretation. We must read each provision of a statute together, without according undue importance to any single provision. *IBP, Inc.*, 633 N.W.2d at 325; 2A Singer, § 46:05, at 154–56. Each term is to be given effect, so that no single part is rendered insignificant or superfluous. 2A Singer, § 46:06, at 186, 190–92.

We believe the intent of the legislature is best revealed by considering the comprehensive approach under the county home rule statute which grants authority to counties to engage in real estate transactions. The procedures applicable to the lease and lease-purchase of real property mirror, to a great extent, the approach for the issuance of general county bonds by a county for the purchase of real estate. The procedures that a county must follow to issue general county bonds depend on the purpose of the bonds under sections 331.442 and 331.443. General county bonds for essential county purposes can be issued by a county following a hearing by the board to receive objections. Iowa Code § 331.443(2). On the other hand, general county bonds for general county purposes require a special election, unless the board gives public notice of its proposal to issue the bond at least ten days prior to the meeting to take action on the proposal and a petition for election is not filed prior to the meeting.[1] *Id.* § 331.442(2), (5).

---

1. The distinction in the approach between the authority of a county to issue general county bonds for the purchase of real estate and the authority of a county to lease real estate can be found in the time period citizens are given to file a referendum petition for an election. Under the election procedure applicable to

county authorization to issue general county bonds, the statute provides for ten days notice to citizens of their right to petition for an election. Iowa Code § 331.442(5)(a). On the other hand, under the election procedures applicable to county authorization to enter into a real estate lease, our legislature allows

It is important to observe that the construction or purchase of a public building is defined either as an essential county purpose or a general county purpose depending upon the cost. *Id.* §§ 331.441(b)(5), 331.441(c)(9). Moreover, the cost limits are exactly the same for the lease of a building under section 331.301(10)(e)(1). *See id.* § 331.441(b)(5). Thus, if a county with a population over 25,000 but less than 50,000 wants to issue general county bonds to construct or remodel a public building at a cost less than $500,000, the special election provision does not apply. However, if the building costs exceed $500,000, the special election procedures apply. This is the same procedural scheme put in place by the legislature for leases.

■■■■■ The similarity between the statutory authority to enter into the lease of a building and the statutory authority to issue bonds for the construction of a building is significant. If the "principal amount" language under section 331.301(10)(e) only applied to annual lease payments, a county would be authorized, without following the election procedures, to enter into a lease or a lease-purchase agreement for a building over a period of years and incur an obligation to pay the lessor an amount in excess of $500,000 over the term of the lease, as long as the annual lease payments were less than $500,000. On the other hand, the county could not issue bonds to construct or purchase the same building for the same total cost without following the public election provisions. We think this interpretation would lead to an absurd result, and we decline to interpret statutes in such a manner. *Anderson,* 636 N.W.2d at 35; *Iowa Dist. Ct.,* 616 N.W.2d at 578; *Schultz,* 604 N.W.2d at 62. Instead, we interpret statutes involving related subject matter consistently and harmoniously. *IBP, Inc.,* 633 N.W.2d at 325; *Iowa Dist. Ct.,* 616 N.W.2d at 578; 2B Singer, § 51.01, at 170.

We conclude the limits set forth in section 331.301(10)(e)(1) apply to the principal amount of the lease or lease-purchase contract over the term of the lease. This interpretation is consistent with the overall approach to the lease and purchase of real estate under the county home rule statute, and best reflects the intent of our legislature.

■■■■■ This interpretation means the lease entered into in this case was void. A fundamental requirement for the enforcement of a municipal contract is that the municipality must have exercised its authority to enter into the contract within the scope of the powers conferred by statute. *Air Quality Prods., Inc. v. State,* 96 Cal.App.3d 340, 157 Cal.Rptr. 791, 796 (1979); *Marco Dev. Corp. v. City of Cedar Falls,* 473 N.W.2d 41, 42–43 (Iowa 1991) (citing 56 Am.Jur.2d *Municipal Corporations* § 503, at 554–56 (1971)); 10A Eugene McQuillen, *The Law of Municipal Corporations* § 29.91, at 2 (3d ed.1999) [hereinafter McQuillen]. If a municipality

---

citizens forty days to file a referendum petition for an election. *Id.* § 331.301(10)(e)(2)(a). We recently held that the ten-day period provided for Polk County residents to accumulate 17,417 signatures necessary to file a petition for an election on the issuance of general county bonds did not offend the due process clause under our Iowa Constitution. *See Bowers v. Polk County Bd. of Supervisors,* 638 N.W.2d at 692–95 (Iowa 2002). For county bonds, the petition must be signed by not less than that number of eligible electors in the county equal to "ten percent of the votes cast in the county for the office of president of the United States or governor [in] the preceding general election, unless otherwise provided by state law." Iowa Code § 331.306. The same provision applies to lease agreements, except the legislature has specifically provided that a petition shall not require more than 1000 signatures. *Id.* § 331.301(10)(e)(2)(b).

fails to appropriately exercise its authority or comply with statutory procedures, the contract is void. *Ryan v. Warren Township High Sch. Dist. No. 121*, 155 Ill. App.3d 203, 109 Ill.Dec. 843, 510 N.E.2d 911, 912 (1987); *Cornick v. Southwest Iowa Broadcasting Co.*, 252 Iowa 653, 656–57, 107 N.W.2d 920, 921–22 (1961); *Iowa Elec. Co. v. Inc. Town of Winthrop*, 198 Iowa 196, 203, 198 N.W. 14, 17 (1924); 10A McQuillen, § 29.91, at 3. The municipality may then refuse to comply with the terms of the void contract. *Marco Dev. Corp.*, 473 N.W.2d at 43. Additionally, the municipality is not estopped from denying the validity of the void contract. *Ryan*, 109 Ill.Dec. 843, 510 N.E.2d at 913; *Marco Dev. Corp.*, 473 N.W.2d at 42; *Iowa Elec. Co.*, 198 Iowa at 204, 198 N.W. at 18; 10A McQuillen, § 29.104.30, at 70. Likewise, the municipality cannot cure the defect through ratification. *Bozied v. City of Brookings*, 638 N.W.2d 264, 269 (S.D. 2001); 10A McQuillen, § 29.104.30, at 70.

▆▆▆▆ It is also irrelevant that the other party has detrimentally relied upon the municipal contract, by fully or partially performing the contract or making expenditures, even if the municipality benefited from the other party's reliance. 10A McQuillen, § 29.104.30, at 71; *see Marco Dev. Corp.*, 473 N.W.2d at 43; *Iowa Elec. Co.*, 198 Iowa at 204, 198 N.W. at 18; *see also Air Quality Prods., Inc.*, 157 Cal. Rptr. at 796–97 (even if party established prima facie case, municipality not contractually liable). Consequently, the municipality is not required to restore the status of the party, pay damages, or provide any other type of remedy to the contracting party. 10A McQuillen, § 29.91, at 3 & n. 15; *see Marco Dev. Corp.*, 473 N.W.2d at 43; *Thompson v. L. J. Voldahl, Inc.*, 188 N.W.2d 377, 380 (Iowa 1971). The rationale supporting this well-established principle is that those who contract with a municipality are charged with notice of the limits on the authority of the municipality. *See Marco Dev. Corp.*, 473 N.W.2d at 43; *Thompson*, 188 N.W.2d at 380; *Burns & McDonnell Eng'g Co. v. Iowa City*, 225 Iowa 1241, 1247, 282 N.W. 708, 711 (1938); *Citizens' Bank v. City of Spencer*, 126 Iowa 101, 105, 101 N.W. 643, 645 (1904); 10A McQuillen, § 29.91, at 3 & n. 14, § 29.104.30, at 70. If the party fails to take notice of the statutory limits, the party is bound at the party's own peril. *Marco Dev. Corp.*, 473 N.W.2d at 43; 10A McQuillen, § 29.104.30, at 71. Moreover, this principle coincides with the presumption that parties incorporate applicable statutes into their contracts. *See Cornick*, 252 Iowa at 656, 107 N.W.2d at 921. In addition, if we permitted parties to enforce void contracts, we would essentially allow municipalities to do indirectly what they are statutorily prohibited from doing directly. *Inc. City of Humboldt v. Knight*, 255 Iowa 22, 29, 120 N.W.2d 457, 461 (1963).

The principal amount of the payments in the ten-year lease agreement between the Board and Miller exceeded the $500,000 limit on Marshall County's authority to enter into lease agreements. Because the Board failed to follow the requisite statutory procedures triggered by the lease terms, the Board did not have the authority to enter into the contract with Miller. *See Marco Dev. Corp.*, 473 N.W.2d at 44; *Lytle*, 225 Iowa at 212, 279 N.W. at 457. Consequently, the contract was void and unenforceable. Although we sympathize with Miller for the large expenditures he made in reliance on the Board's representations, the law does not grant him a right of action for breach of contract. Miller had notice that the municipality was exceeding the bounds of its authority and, therefore, must bear the loss.

**IV. Separability Clause.**

▆▆▆▆ Generally, when a portion of an agreement is deemed invalid, the re-

maining portions of the agreement can be enforced as long as they can be separated from the illegality. 10A McQuillen, § 29.95, at 11. For example, if the invalid portion is merely incidental to the primary purpose of the contract, the contract remains in effect. *See id.* However, if the contract would not have been entered into independent of the invalid portion, the entire contract is void. *Id.* at 11 & n. 4; *see also Equity Control Assocs., Ltd. v. Root,* 638 N.W.2d 664, 671 (Iowa 2001) (a contract is not separable if it intends each and all of its parts to be interdependent); *In re Estate of Claussen,* 482 N.W.2d 381, 383 (Iowa 1992) (same); *Quarton v. Am. Law Book Co.,* 143 Iowa 517, 533, 121 N.W. 1009, 1015 (1909) (same).

█ In this case, we are not confronted with the situation where a portion of the contract is declared illegal. Instead, the Board did not have the authority to contract with Miller without first fulfilling the statutory requirements. Because the contract in its entirety is void, there is nothing left to sever. *See* 10A McQuillen, § 29.95, at 11 (where "good" and "bad" parts of contract are inseparable, the contract as a whole is deemed invalid). Consequently, neither the separability clause in the lease agreement nor the general doctrine of separability can save the municipal contract in this case.

### V. Conclusion.

Under the facts of this case, the Board did not have the authority to enter into the lease agreement with Miller. Because we find the agreement is void in its entirety, the separability clause does not apply. We affirm the decision of the district court.

**AFFIRMED.**