# IN THE COURT OF APPEALS OF IOWA

No. 18-0714
Filed August 7, 2019


**SYCAMORE, L.L.C. and LAKE CALVIN PROPERTIES, L.L.C.,**
    Plaintiffs-Appellants,

**vs.**

**CITY COUNCIL OF IOWA CITY,**
    Defendant-Appellee.
_____


Appeal from the Iowa District Court for Johnson County, Kevin McKeever, Judge.


The owners of property appeal from the district court ruling annulling their writ of certiorari challenging the legality of the decision denying their application to have their property rezoned. **AFFIRMED.**


Adam S. Tarr of Pugh Hagan Prahm PLC, Coralville, for appellants.

Elizabeth J. Craig (until withdrawal) and Sara Greenwood Hektoen, Iowa City, for appellee.


Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Sycamore, L.L.C. and Lake Calvin Properties, L.L.C. appeal the district court's ruling annulling their writ of certiorari challenging the City Council of Iowa City's denial of their application to rezone 42.01 acres of property. On appeal, the landowners maintain the district court erred in concluding (1) the City Council did not incorrectly apply the law in denying their application for rezoning and (2) the Council's decision is supported by substantial evidence in the record.

**I. Background Facts and Proceedings.**

The 42.01 acres at issue here were annexed by the City of Iowa City in 1994 as part of the 422-acre tract of land owned by Sycamore Farms Company. The parcel of land lies in what Iowa City has categorized as the South District.[1] Before the annexation, Iowa City and Sycamore Farms entered into a Conditional Zoning Agreement (CZA). The CZA states, in part,

> [Sycamore Farms] has requested the City to annex and rezone approximately 422 acres of land located south of Highway 6, east of Sycamore Street and west of Sioux Avenue . . . from the County designation of RS, Suburban Residential and R3A, Multi-Family Residential, to RS-8, Medium Density Single-Family Residential, RFBH, Factory Built Housing Residential, RM-12, Low Density Multi-Family Residential, RM-20, Medium Density Multi-Family Residential, RR-1, Rural Residential, and ID-RM, Interim Development Residential Multi-Family.
>     . . . .
>     4. In consideration of the City's rezoning the subject property from County RS and R3A, Owner agrees that development and use of the subject property will conform to the requirements of the applicable zones: RS-8, Medium Density, Single-Family Residential, RFBH, Factory Built Housing Residential, RM-12, Low Density Multi-Family Residential, RM-20, Medium Density Multi-Family Residential, RR-1, Rural Residential; and ID-RM, Interim Development Residential Multi-Family.

---

[1] The 1997 Comprehensive Plan adopted by Iowa City divided the city into ten separate planning districts.

Additionally, Sycamore Farms agreed "the development and use of the subject property will conform to" additional conditions, including taking steps to protect certain natural features of the land, creating a conservation easement with part of the land, giving the City fifteen acres to create a public school, and more. As part of the CZA, Sycamore Farms was also required to "acknowledge[] that the conditions contained herein are reasonable conditions to impose on the land under Iowa Code § 414.5 (1993), and that said conditions satisfy public needs which are directly caused by the requested zoning change."

In September 2015, the current landowners, Sycamore, L.L.C. and Lake Calvin Properties, L.L.C.,[2] submitted a rezoning application to the City Council, asking for the parcel to be rezoned from ID-RM (interim development, multifamily residential) and RR-A (low-density rural) to RM-20 (medium density multi-family residential). The requested rezoning would allow for the development of 675 three-bedroom or 1000 one- and two-bedroom apartments to be built. In the application, the landowners claimed that the 1994 annexation of the land by Iowa City "was the subject of lengthy negotiations" where the City and landowners "were able to reach a mutual agreement regarding the properties' annexation as well as their future development." The landowners maintained the requirements outlined in paragraph 4 of the CZA were "a series of bargained-for considerations given between the parties" with the understanding the property would be rezoned RM-20 "once an adequate road was constructed to access the properties."

---

[2] The current landowners are successors in interest to Sycamore Farms Company, and the CZA—by its terms—runs with the property.

In October, City staff prepared a recommendation for the Planning and Zoning Commission encouraging the denial of the application. The recommendation was based, in part, on the 1997 amendment to the Comprehensive Plan for the South District[3] as well as the City's 2030 Comprehensive Plan, which favored a regime of single-family housing and some low- to medium-density housing and disfavored concentrating large areas of multi-family units in one neighborhood; concern the proposed multi-family development lacked access to goods and services and did not have the necessary infrastructure in place to support it; and concern about the impact the development would have on wetland and conservation areas. Additionally, the recommendation noted:

> The [landowners] contend[] that the ID-RM designation was negotiated as part of an annexation agreement and implies that there was a commitment to zone this property RM-20. Staff found no documentation to support the claim of an agreement to zone this property to multifamily. Zoning decisions must be made in accordance with the Comprehensive Plan after giving consideration to such factors as efficient urban development patterns, controlling congestion of streets, safety, health and welfare of the public. Public policy dictates that this police power be freely exercised by the City Council in order to respond to changes in the community's needs and concerns.

The Commission also received written correspondence from the public—all of which urged denial of the zoning application. At a public meeting, the landowners urged the Commission to recommend rezoning, claiming the CZA was a valid agreement that gave the City consideration in the form of land for a new school and 190 acres set aside in a conservation easement in exchange for

---

[3] Shortly after the Commission made its recommendation, the 2015 South District Plan was adopted.

a guarantee the land would be rezoned RM-20 once the landowners complied with their obligations. The City staff present at the meeting disagreed with the landowners' claims, noting "future zoning cannot be guaranteed. Contract zoning violates public policy, the zoning power is a police power which means that the City Council needs to be able to respond to health, safety, welfare issues as they appear at the time they are considering the application." The staff urged the Commission to consider the application using only the current comprehensive plan and the current conditions.

The Commission unanimously voted to recommend denial of the landowners' rezoning application. At the request of the landowners, the commission's recommendation was deferred.

In March 2017, the landowners asked that their application be placed on the City Council's agenda for a public hearing, which ultimately took place in May 2017. At the public hearing, the Council accepted written correspondence from one resident urging denial of the application. The landowners spoke on behalf of their application, again urging that the CZA provided for the rezoning of the land as they requested and noting the City's recognized need for more affordable housing, which the higher density zoning would allow. The Commission's recommendation was reviewed. In line with the Commission's recommendation, the Council voted unanimously to reject the application for rezoning.

In June 2017, the landowners filed a petition for writ of certiorari in the district court, claiming the Council's decision was illegal because the Council failed to recognize it was bound by the CZA to rezone the property as requested

and because substantial evidence in the record did not support the Council's decision to deny the application.

Following a hearing, the district court annulled the landowners' writ, ruling:

> The Court agrees with the City Council of Iowa City's determination that the CZA does not guarantee any particular rezoning decision. While the developers may have inferred that such a promise exists, it does not. The Court recognizes that the language would tend to support the conclusion that the land would most likely be rezoned at some point. However, the Court has thoroughly reviewed the CZA and determined that there is no provision contained anywhere in the CZA that guarantees that the land will be rezoned to RM-20. Furthermore, there is certainly no provision that guarantees that any particular type of rezoning will take place at any particular point in time.
> . . . .
> . . . The Court finds that the City Council of Iowa City's determination that the [landowners'] rezoning plan is inconsistent with the 1997 and 2030 plans does not constitute a misapplication of the law.

The court also concluded, after reviewing the comprehensive plans for the pertinent area and the information in the record, that substantial evidence supported the Council's decision to deny the rezoning application.

The landowners appeal.

## II. Standard of Review.

An appeal from a certiorari judgment of a district court is treated as an ordinary action and will be affirmed if supported by competent and substantial evidence. *Norland v. Worth Cty. Comp. Bd.*, 323 N.W.2d 251, 253 (Iowa 1982).

## III. Discussion.

### A. Illegal Decision.

The landowners maintain the district court erred in finding the City Council's denial of the landowners' application for rezoning was not illegal,

asserting the Council was bound by the CZA to rezone the property once certain conditions of the CZA were met.

Like the district court, we have found nothing in the CZA that establishes the City agreed to a future rezoning to any specific zone at any specific time. The language the landowners rely on in paragraph 4 of the CZA contemplates obligations for the 1994 changes—the annexation of the land and the concurrent rezoning to ID-RM. Moreover, we agree with the Council that any agreement binding a future council to rezone land a specific way would be void. *See Bd. of Educ. v. Bremen Twp. Rural Indep. Sch. Dist.*, 148 N.W.2d 419, 408 (Iowa 1967) ("No citation of authority is needed for the proposition that one legislature cannot bind future legislatures upon such policy matters. . . . The same rule applies to boards or other groups properly delegated legislative authority."). "A municipal corporation may, by contract, curtail its right to exercise functions of a business or proprietary nature, but, in the absence of express authority from the legislature, such a corporation cannot surrender away its governmental functions and powers, and any attempt to barter or surrender them is invalid." *Marco Dev. Corp. v. City of Cedar Falls*, 473 N.W.2d 41, 42 (Iowa 1991) (quoting 62 C.J.S. *Municipal Corporations* § 139, at 281–82 (1949)); *see also Residential & Agric. Advisory Comm., LLC, v. Dyersville City Council*, 888 N.W.2d 24, 40 (Iowa 2016) ("[W]e have long recognized that '[z]oning decisions are an exercise of police power to promote the health, safety, order and morals of society.'" (alteration in original) (citation omitted)).

**B. Substantial Evidence.**

The landowners also argue the district court erred in finding substantial evidence supported the Council's decision to deny their application to rezone. *See Fetters v. Degnan*, 250 N.W.2d 25, 27 (Iowa 1977) (providing a writ of certiorari should be granted when an inferior tribunal, board, or officer, has acted illegally and stating, "There is an illegality within the meaning of [Iowa Rule of Civil Procedure 1.1401] when the findings upon which the inferior court or tribunal based its conclusions of law are not supported by substantial evidence"). "The question posed is whether the decision is supported by any competent and substantial evidence, and the burden of showing illegality rests upon an asserting party." *McIntyre v. Page Cty. Sheriff's Office*, 538 N.W.2d 305, 307 (Iowa Ct. App. 1995).

"Iowa Code section 414.3 requires that any zoning regulations adopted by a city council . . . 'shall be made in accordance with a comprehensive plan.'" *Residential & Agric. Advisory Comm.*, 888 N.W.2d at 44 (quoting Iowa Code § 414.3). "This requirement was adopted to prevent haphazard zoning." *Id.* at 45. "[I]n the context of rezoning, . . . compliance with the comprehensive plan requirement merely means that zoning authorities have given 'full consideration to the problem presented, including the needs of the public, changing conditions, and the similarity of other land in the same area.'" *Iowa Coal Mining Co., Inc. v. Monroe Cty.*, 494 N.W.2d 664, 669 (Iowa 1993) (emphasis removed) (quoting *Montgomery v. Bremer Cty. Bd. of Supervisors*, 299 N.W.2d 687, 695 (Iowa 1980)).

The density level requested by the landowners with the RM-20 zoning designation was inconsistent with both the 2015 South District Plan and the 2030 Comprehensive Plan. Additionally, concerns were expressed that the infrastructure was not yet ready for such a large population and that expending City dollars to ready the infrastructure may be ill-advised since the development was "leap frogging" over undeveloped land. Similarly, the 2030 Comprehensive Plan sets out the goal of "[e]ncourag[ing] compact, efficient development that is contiguous and connected to existing neighborhoods to reduce the cost of extending infrastructure and services." There were also concerns the disconnectedness of the development would pose a problem for the lower-income tenants who were expected because the closest bus stop was more than one mile away and there were no grocery stores in close proximity. These concerns are consistent with the zoning code, which states that RM-20, the medium density multi-family residential zone, "is particularly well suited to locations adjacent to commercial areas and in areas with good access to all city services and facilities." Iowa City, Iowa, Code § 14-2B-1(B) (2017).

As the district court noted, when reviewing for substantial evidence, "[t]he fact that a different result may have been fully justified by the record is of no importance." We "will not substitute [our] judgment as to wisdom or propriety of action by a city or town council, acting reasonably within the scope of its authorized police power, in the enactment of ordinances establishing or revising municipal zones." *Anderson v. City of Cedar Rapids*, 168 N.W.2d 739, 742 (Iowa 1969). We agree with the district court that substantial evidence supports the Council's denial of the landowners' rezoning application.

**IV. Conclusion.**

Because the Council did not incorrectly apply the law and substantial evidence supports its decision to deny the landowners' application for rezoning, we affirm the district court's annulling of the landowners' writ of certiorari.

**AFFIRMED.**